HEARD APRIL TERM, 1874.

## Jenkins *vs.* Charleston.

The City Council of Charleston may lawfully tax its own stock, as well that owned by non-residents as that owned by residents of the city.

Such a tax does not impair the obligation of the contract.

Stock of a municipal corporation, payable and transferable only at the treasury of the corporation, has its *situs* within the corporation.

Where a city taxes its own stock it may enforce payment by deducting the amount of the tax from interest due on the stock.

Before GRAHAM, J., at Charleston, March Term, 1873.

This was an action by T. C. Jenkins against the City Council of Charleston, to recover $871.69, a balance alleged to be due by the defendant to the plaintiff for interest, at six per cent., which accrued during the years 1870 and 1871, on certain stock of the defendant owned by the plaintiff.

The plaintiff was a citizen and resident of the State of Maryland, and owner of the stock in question. By ordinances of the City Council of Charleston, passed to raise supplies for the years 1870 and 1871, a tax of two cents upon the dollar was laid for each of those years on the value of all property within the city, its stock inclusive, and the City Treasurer was directed to retain the tax assessed on the city stock, out of the interest thereon, when the same is due and payable. The taxes assessed for the years 1870 and 1871, on the stock owned by the plaintiff, amounted to the sum above mentioned, and this sum was deducted by the City Treasurer from the interest due the plaintiff for those years.

Neither any Act of the State, nor the ordinance under which the stock was issued, declared it exempt from taxation.

The action was brought to recover the sum thus retained, with interest, and the ground chiefly relied upon was, that the ordinances imposing the tax impaired the obligation of the contract between the city and the owner of the stock.

There were four other actions tried at the same time, each brought by a different plaintiff, and all founded upon substantially the same state of facts and presenting the same question, the only difference, as to one of them, being that the plaintiff was a resident of the city.

The cases were tried by the Court without a jury, and His Honor the Circuit Judge decided : (1) That the taxes were constitutionally

and legally imposed; and (2) that the mode by which payment was enforced was lawful.

Judgments were accordingly entered for the defendant, and the plaintiff appealed.

*Magrath & Lowndes, Porter & Conner, DeSaussure,* for appellants.

*Seabrook,* City Attorney, *Pringle,* contra.

Oct. 6, 1874. The opinion of the Court was delivered by

MOSES, C. J. The general power of the City Council of Charleston "to make such assessments on the inhabitants of Charleston, or those who hold taxable property within the same, for the safety, convenience, benefit and advantage of the said city, as shall appear to them expedient," is not disputed on the part of the appellants. Whatever may be the extent of its authority in this regard, or how far the Legislature may have devolved upon it any of its own attributes of sovereignty, so far as the taxing power is concerned, within its municipal limits, the only questions raised in the cases are : 1st. Can the city of Charleston tax its own stock ? 2d. If it is vested with this right, can it exercise it as to such of its stock as is held by non-residents ?

The argument on the general question was rested alone, by the appellants, on the ground that the tax imposed by the corporation impaired the obligation of the contract which existed between the holder of the stock and the city. That a contract was created imposing obligations on both parties, binding them to its performance according to its true intent, is too plain for doubt. The States are prohibited by the 10th Section of the 1st Article of the Constitution from passing any "law impairing the obligation of contracts," and if this right of the City Council to levy the tax in question, which it could only exercise through the powers granted by its charter, is in violation of the said prohibition, it follows, as an inevitable consequence, that the parties must be relieved of the tax of which they complain.

Taxation is a power not only necessary but indispensable to governments. Its exercise by the States can only be controlled by constitutional limitations. While these are observed and recognized, the wise and prudent enforcement of the power must depend on the wisdom and discretion of those to whose hands the preroga-

tive is entrusted. The mere possession of governmental powers, without adequate means of execution for the public good, would be but as a "barren sceptre" for defense. There may be other limitations, as where the power is resorted to for the purpose of attaining an end, which, under the taxing power, could not be legitimate, as, for instance, if under the guise of a tax the Legislature designed to inflict a penalty. Mr. Cooley, in his Constitutional Limitations, p. 129, says: "Where the power which is exercised is legislative in its character, the Courts can enforce only those limitations which the Constitution imposed, and not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism and sense of justice of their representatives."

The general power being inherent in the government, those who deny the existence of the particular right sought to be enforced, must show it, as clearly forbidden by positive declaration, or arising from an implication too clear to be resisted. If the right of taxation existed as a power in the government at the time of the contract, and so entered into it as to become one of its necessary elements and attributes, then the obligation of the contract is not impaired by the imposition of the tax, because it was a property which attached to the contract and became one of its controlling attributes.

All property is held by individuals subject to the exercise by the State of the sovereign power which it holds over it. Where the State creates a municipal corporation, it devolves upon it a portion of that power, to the extent conferred by its charter. Whatever rights it can exercise, through its substitution in the place of the State, within its prescribed territorial boundaries, is by force of the very sovereign power which attached to the State. The duties of such a corporation are civil and political, as well as municipal. Where the right to tax has been conferred upon a body of that character, the intention to surrender it generally, or in any particular instance, must be shown by express act, or, as we have said in regard to its relinquishment by the State, by plain and unmistakable intent; in the language of *Ohio Life and Trust Company* vs. *Debott*, 16 How., 435, referring to *Billings* vs. *Providence Bank* and the case of the *Charles River Bridge Company*, "by words too plain to be mistaken."

Mr. Dillon, in his treatise on Municipal Corporations, Section 589, says: "The power of *taxation* and the power of *eminent domain*, subject to both of which all private property is *held*, although they

originate in political necessity, are in their nature materially different. For the taxes paid or money exacted under the taxing power, no direct specific compensation is made, but where property is taken under the right of eminent domain, this can be done only to the limited extent required by the particular object or enterprise in favor of which it is exercised, and then only on the condition of making to the owner direct and full compensation in money for the *particular* and *unequal* sacrifice which he would otherwise be obliged to make for the public benefit."

The power of taxation is at least as high a prerogative of government as that of eminent domain, for while taxation does take private property for public use, it acts in this particular instance without the correlative obligation of compensation, for the reason that in the one case the property of an individual is taken for the public good, and made subservient to it without including other property similarly situated, while in the other all property of the same kind is held subject to the imposition of a tax, and must contribute to the fund which it is proposed to raise.

In *West River Bridge Co.* vs. *Dix*, 6 How., 50–71, while it was admitted that the charter was a contract between the State and the company, it was held "that the right of eminent domain did not interfere with the inviolability of contracts; that all contracts are made subject to that right, and the contract in question was not violated by its exercise."

In the opinion of the Court it is said: "But into all contracts, whether made between States and individuals, or between individuals only, there enter conditions which arise not out of the literal terms of contract itself; they are superinduced by the pre-existing and higher authority of the laws of nature, of nations, or of the community to which the parties belong; they are always presumed, and must be presumed to be known and recognized by all; are binding upon all, and need never, therefore, be carried into express stipulation, for this could add nothing to their force. Every contract is made in subordination to them, and must yield to their control, as conditions inherent and paramount, whenever a necessity for their execution shall occur. Such a condition is the right of eminent domain." At page 531 it is said: "No State, it is declared, shall pass a law impairing the obligation of contracts, yet, with this concession constantly yielded, it cannot be justly disputed that in every political sovereign community there inheres necessarily the right

and the duty of guarding its own existence, and of protecting and promoting the interests and welfare of the community at large;" and, on page 532: "This power, denominated the *eminent domain* of the State, is, as its name imports, paramount to all private rights vested under the government, and these last are, by necessary implication, held in subordination to this power, and must yield, in every instance, to its proper exercise."

It is impossible not to perceive that the same principle which ran through and controlled the judgment in that case must apply where it is sought to resist the payment of a tax, because its imposition interfered with the inviolability of a contract.

Taxation is, in every regard, as much an inherent power of government as is that of *eminent domain.* Mr. Justice Woodberry, in a separate opinion in the same case, p. 539, says: "I take the liberty to say, then, as to the cardinal principle involved in this case, that, in my opinion, all the property in a State is derived from or protected by its government, and hence is held subject to its wants in taxation, and to certain important public uses, both in war and peace." At page 542 he says: "And because, on a like principle, taxes may be enforced on such property, as well as all other property, though coming by grant from the State, and may be done without violation of the contract, when there is no bonus paid or stipulation made in the charter not to tax it. This is well settled."

In *Gilman* vs. *City of Sheboygan,* 2 Black., 513, Mr. Justice Swayne said: "The Act of 1854 authorized the borrowing of money, the issuing of bonds, and the levying of a tax upon all the property in the city, for the purposes specified. The imposition, modification and renewal of taxes, and the exemption of property from such burdens, is an ordinary exercise of the power of State sovereignty. There is no pledge, express or implied, that this power should not thereafter be exercised.

In *Providence Bank* vs. *Billings,* 4 Pet., 562, Chief Justice Marshall, delivering the opinion of the Court, said: "The power of legislation, and, consequently, of taxation, operates on all the persons and property belonging to the body politic. This is an original principle, which has its foundation in society itself. It is granted by all, for the benefit of all. It resides in government, as a part of itself, and need not be reserved when property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. However absolute the right of an individual

may be, it is still in the nature of that right that it must bear a portion of the public burthens, and that portion must be determined by the Legislature."

In *Beanster* vs. *Hugh*, 10 N. H., 143, "the power of taxation" is said "to be essentially a power of sovereignty or eminent domain."

Mr. Justice McLean, in delivering the opinion of the Court in *State Bank of Ohio* vs. *Knoop*, 16 How., said: "The power of taxation has been compared to that of eminent domain, and it is said, as regards the question before us, they are substantially the same. These powers exist in the same sovereignty, but their exercise involves different principles. Property may be appropriated for public purposes, but it must be paid for. Taxes are assessed on property for the support of the government under a legislative Act."

Is there any thing in the contract itself which, by necessary implication, can be construed into a stipulation or covenant for exemption from taxation by the city? The control remains undisturbed—unchanged. The obligation on the city to pay the annual interest is not denied. The performance of all it imposes is admitted, and the agreement remains as perfect in form, and as binding in effect, as when it was first executed. But, it is said, if the city assesses a tax on the value of the stock, the holder does not receive the amount of the interest agreed to be paid. It is diminished to the extent of the tax. This result, however, is not effected by any change of the contract or refusal of the Council to recognize it as imposing on them a liability to pay the accruing interest, but the stock becomes less valuable to the holder, because the authority representing, to a certain extent, the sovereignty of the State, interposes and lays a charge upon it for public purposes through a tax. The same consequence follows from the imposition of taxes by the city on all other property admitted to be liable to it. The tax on real property and on that of personal, having a tangible form, to the extent of its demand, lessens the value of such property. The tax from income, no matter from whatever source derived, necessarily reduces its amount. It is difficult to perceive why the propositions now insisted on by the appellants may not as well apply to the whole principle on which the right to tax is founded.

In the case of *Providence Bank* vs. *Billings*, already referred to, Chief Justice Marshall uses this language: "If the power of taxation is inconsistent with the charter, because it may be so exercised as to destroy the object for which the charter is given, it is equally

inconsistent with every other charter, because it is equally capable of working the destruction of the objects for which every other charter is given. If the grant of a power to trade in money to a given amount, implies an exemption of the stock in trade from taxation, because the tax may absorb all the profits, then the grant of any other thing implies the same exemption; for that thing may be taxed to an extent which will render it totally unprofitable to the grantee. Land, for example, has in many, perhaps in all the States, been granted by government, since the adoption of the Constitution. This grant is a contract, the object of which is, that the profits issuing from it shall enure to the benefit of the grantee; yet the power of taxation may-be carried so far as to absorb these profits. Does this impair the obligation of the contract? The idea is rejected by all, and the proposition appears so extravagant that it is difficult to admit any resemblance in the cases; and yet if the proposition for which the plaintiffs contend be true, it carries us to this point. That proposition is, that a power which is in itself capable of being exerted to the total destruction of the grant is inconsistent with it, and is, therefore, impliedly relinquished by the grantor, though the language of the instrument contains no allusion to the subject. If this be an abstract truth it may be supposed universal; but it is not universal, and, therefore, its truth cannot be admitted in these broad terms in any case. We must look for the exemption in the language of the instrument, and if we do not find it there it would be going very far to insert it by construction."

Mr. Blackwell, in his work on Tax Titles, pp., —, says: "If the tax is laid to raise-a revenue for the expenses of the State, it shall be laid equally on all the property in the State." A resident of Charleston might convert his entire property into city stock, and according to the proposition contended for on the part of the appellant, while enjoying all the protection which the corporation afforded him, and all others in its limits, may contribute nothing to its support—not even to the very taxes through which the interest on his own stock is to be raised. The holders of all other property are to be assessed, while he, reaping all the advantages, bears none of the burthens of a property holder. Nor can the fact that the right may be abused operate to defeat its exercise. The same argument would apply to destroy all the functions of government.

As was said by Ch. Justice Marshall, in his opinion from which we have already cited: "However absolute the right of an indi-

vidual may be, it is still in the nature of that right that it must bear a proportion of the public burthens, and that portion must be determined by the Legislature. The vital power may be abused, but the Constitution of the United States was not intended to furnish the corrective for every abuse of power which may be committed by the State Government. The interest, wisdom, and justice of the representative body, and its relations with its constituents, furnish the only security where there is no express control against unjust and excessive taxation, as well as against unwise legislation generally."

Regarding the city stock as personal property liable to the tax imposed, it remains to be considered whether such stock, held by non-residents, can be taxed by the said corporation. The right is resisted entirely on the ground that personal property has no *situs* in itself, but follows the domicile of its owner. But this is not true as a general and unvarying rule, for its application will be found to be trammelled and encumbered with so many exceptions, that the principle upon which its very existence depends is not only affected but destroyed. Personal property of a visible and tangible kind is taxed where it is found, without regard to the residence of the owner, and his domicile in one State will not so affect the possession of property beyond it as to subject it to taxation by the State in which he resides. If the rule contended for is without restriction, then the right to tax would be regulated, not by the actual *situs* of such personal property, but by the domicile of the owner. Mr. Story, in his Conflict of Laws, Section 380, referring to the principle, says that "Lord Loughborough has stated it with great clearness and force in one of his most elaborate judgments."— *Vibb* vs. *Worswick,* 1 H. Blk., 690. "It is a clear proposition, (said he,) not only of the law of England, but of every country in the world where law has the semblance of science, that personal property has no locality. The meaning of that is not that personal property has no visible locality, but that it is subject to that law which governs the person of the owner, both with respect to the disposition of it, and with respect to the transmission of it, either by succession or by the act of the party." He evidently here restricts the rule to the disposition and transmission of such property. Ch. Kent, in the first volume of his Commentaries, p. 406, refers to the rule as a "fiction of law," and says: "It may now be considered as part of the settled jurisprudence of this country, that personal property,

as against creditors, has locality, and the *lex loci rei sitœ* prevails over the law of the domicile with regard to the rules of preference in the case of insolvent estates." So, too, in regard to attachment laws, or any proceeding by which the Court, not having jurisdiction of the person, obtains control of the property by its process against it, and makes it amenable to its judgment, thus acting on the party through his property, wherever the latter may be found, without respect to his domicile.

Mr. Story, in the same work first referred to, Section 550, himself says: "The general doctrine is not controverted, that although movables are, for many purposes, to be deemed to have no *situs* except that of the domicile of the owner, yet this being but a legal fiction, it yields whenever it is necessary, for the purposes of justice, that the actual *situs* of the thing should be examined." Does it consist with our idea of the justice which should govern the daily transactions of men, that the State which protects the property that, by its proper and discrete arrangement, gives it additional value, should not receive the consideration for these results in contribution to its expenses, while the State, which affords it no protection and adds nothing to its value, should control it through the mere domicile of the holder ? If it can not do this as to visible property, on what principle can the right be claimed as to stock, because it is a thing incorporeal. The chose has value, as well as the visible property. While the use of the latter may yield its possessor income, the stock does the same thing, and in the very place where it was issued.

In *Hoyt* vs. *The Courts*, 23 N. Y., 228, in the opinion of the Court, by C. J. Lemstock, it is said: "These and other illustrations, which are mentioned, demonstrate that the fiction or maxim *mobilia personam sequntur* is by no means of universal application. Like other fictions, it has its special uses. It may be resorted to when convenience and justice so require. In other circumstances, the truth, and not the fiction, affords, as it plainly ought to afford, the rule of action * * * * ; accordingly there seems to be no place for the fiction of which we are speaking in a well adjusted system of taxation."

In *Green* vs. *Van Buskirk*, 7 Wall., 139, it was held that "the fiction of law, that the domicile of the owner drew to it is his personal estate, where ever it may happen to be, yields, whenever, for

the purposes of justice, the actual *situs* of the property should be examined."

The case of *Cleveland, Painsville and Ashtabuld R. R. Co.* vs. *Pennsylvania,* 15 Wallace, 300, is much relied on by the appellants, but we do not think that the ruling there can sustain the proposition on which the cases here depend. There the question presented, as the opening remarks of the opinion admits, "applies to the interest or bonds of the railroad company, made payable out of the State, issued to and held by non-residents of the State, citizens of other States." The stock involved here was issued by the city of Charleston, payable and transferable there, and there alone can renewals of certificates, in case of loss, be obtained. The opinion in the case just referred to admits that the *situs* of public securities does not depend on the domicile of the owner. On page 323 it is said: "It is undoubtedly true that the actual *situs* of personal property, which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the States in which it may be taxed. The same thing is true of public securities, consisting of State bonds and bonds of municipal bodies, &c.; but other personal property, consisting of bonds, mortgages, and debts generally, has no *situs* independent of the domicile of the owner."

A clear and manifest distinction is here drawn between bonds of municipal corporations and those of private bodies and individuals. The title to bonds and debts generally can not only be transferred anywhere, and legal demand of payment made on the debtor, and suit brought wherever he may be found, or, he being absent and his goods present, they may, by attachment proceeding, be subjected to their payment. But the debt of the municipal corporation is only transferable and demandable at its office, and it can only be sued in a Court which has jurisdiction over territory within which its own limits are prescribed. All the qualities which demand it seem to give it a local existence, so far as its issue, transfer and payment are concerned.

We are sustained in the views which have induced our conclusion by the opinion of Chief Justice Waite, in the case of *Tappan* vs. *Merchants' Bank of Chicago,* Supreme Court of the U. S. Dec., I, 1873. He says, in the course of it, that "shares of stock in national banks are personal property. They are a species of personal property, which is, in one sense, intangible and incorporeal, but the law which creates them may separate them from the person of their

owner, for the purpose of taxation, and give them a *situs* of their own. * * * The shareholder is protected in his person by the government at the place where he resides, but his property in this stock is protected at the place where the bank transacts its business. If he were a partner in a private bank doing business at the same place, he might be taxed there on account of his interests in the partnership. It is not easy to see why, upon the same principle, he may not be taxed there on account of his stock in an incorporate bank. His business is there as much in the one case as in the other. He requires for it the protection of the government there, and it seems reasonable that he should be compelled to contribute there to the expenses of maintaining that government. It certainly can not be an abuse of legislative discretion to require him to do so."

Objection has not been urged, in the argument, as to the particular mode provided by the ordinances for the collection of the tax. If the party was liable to the tax it worked no injury to him. Resort to summary proceedings at variance with the general spirit of our laws has been allowed against delinquent tax-payers, and has been permitted very much by the necessity of the occasion, which requires energy and promptness in collecting the public dues of that character.—*State* vs. *Allen*, 2 McC., 59; Blackwell on Tax Titles, 28. A resident of the city might convert his whole estate into such stock, and the corporation left without remedy for the tax assessed upon it, unless it could be deducted from the interest payable to the holder. A non-resident holder of such stock could be reached for the tax in no other way.

All the cases involve the same questions, and the motion in each is dismissed.

*Wright*, A. J., concurred.

WILLARD, A. J. In my judgment it is not necessary to consider the question whether the attempt by the city government to impose the tax in question was an act tending to violate the obligation of a contract. If the Constitution of the State, or the statutes conferring the taxing power upon the defendants, had that effect, the question would properly arise.

I am satisfied that neither the Constitution nor statutes conferring municipal power on the city government are to be construed as

supporting the exercise of the taxing power called in question in the present case.

The plaintiff is not a resident or inhabitant of the city of Charleston, nor is he liable to taxation there, for municipal purposes, as the owner or holder of either real or personal property within that city. There is no special authority conferred either by the Constitution or the statutes to reach the imposition of a tax in such a case, nor can it be implied from the general authority to levy and collect taxes.

In order to impose a tax there must be a person liable to taxation, either directly, as in the case of a poll-tax, or by reason of some subject of taxation—either real or personal property—within the taxing jurisdiction. The grant of authority to the city government to tax is limited by the nature of taxation and the rules of law governing its exercise, and where the statute is silent on the subject, the Courts are competent to apply the limitations thus imposed by the recognized principles applicable to the case.

The only ground on which the tax before us can be supported is, that the plaintiff was the owner of city stock. In substance and legal effect the city stock is merely the evidence of debt due from the city to the holder of its stock. It bears no analogy to stock in an incorporated company, as in the latter case the stockholder is part owner of the capital and earnings of the company, while the holder of the city stock has no right beyond that of claiming a sum certain, and interest at an agreed rate.

The question, then, resolves itself into this: whether the city can impose upon the non-resident holder of its obligation any part of the duty of supporting the municipal government. It is clearly against reason and justice. It is a case of a debtor claiming support from his creditor while acquiring the means of paying his debt.

A principle so clearly wrong needs no elucidation, nor need it be encumbered with laborious considerations of the legal idea of the *situs* of property. It is simply an abuse of the taxing power, recognized at once by the application of those rules of right dealing that are open as well to the common sense of the cammunity at large as to those fettered by legal learning.