FRANCIS O'CALLAGHAN, APPELLANT, *v.* JOHN FRASER, DEFENDANT, AND ABRAM KLING, RECEIVER, RESPONDENTS.

*Receiver — an order appointing him has no extra territorial effect — right of the debtor to confess judgment, under which a foreign creditor takes the debtor's property from the receiver — contempt of court by the debtor — computation of the damages.*

One Kling was appointed, in the State of New York, the receiver of the assets of a firm, consisting of the plaintiff O'Callaghan, and the defendant Fraser, who were engaged in the leather business at New York and Philadelphia. The receiver took possession of the firm property in New York, and went to Philadelphia where O'Callaghan delivered to him the firm property in that city. Subsequently, O'Callaghan, claiming to have become suspicious that an intention existed to sacrifice the property by a hurried sale, without proper

notice, confessed judgments for debts due to certain Philadelphia firm creditors, who, according to the practice of Pennsylvania, issued executions thereon, under which the property was taken from the receiver. The validity of the debts for which the judgments were confessed was in dispute, being affirmed by O'Callaghan and denied by Fraser.

Upon the application of the receiver the court below adjudged O'Callaghan to have been guilty of a contempt, in interfering with the property in the hands of the receiver in violation of the injunction in the order appointing the receiver, and imposed upon him a fine equal to the value of the property levied upon less what it would have cost the receiver to sell it. The court did not pass upon the validity of the debts alleged to be due to the Philadelphia creditors.

*Held,* that the order appointing the receiver had no extra territorial effect and did not confer upon him authority to go into a foreign jurisdiction and there take possession of the property.

That although the delivery of the property to him by O'Callaghan was lawful and valid, as between him and the receiver, it had no effect upon the rights of the Philadelphia creditors.

That the mere confession of judgment by O'Callaghan, for an actual *bona fide* indebtedness upon which an attachment might have issued upon the application of the creditors, did not subject him to punishment as for a contempt in violating the injunction, although he intended thereby to give the creditors of the firm in Philadelphia an opportunity to enforce their superior legal rights against the firm property in that State.

That it would be otherwise were judgments confessed against the firm in cases in which no debts in fact existed.

That in any event the validity of the alleged debts should have been passed upon by the court, as, if valid, their extinguishment would be a circumstance tending to diminish the amount of the damages.

APPEAL from an order of the Special Term in a proceeding by Abram Kling, Esq., receiver of the partnership property of the plaintiff and defendant in this action, to punish the plaintiff for contempt in improperly interfering with such property, adjudging said plaintiff to be in contempt and imposing upon him the fine of $23,042.20 for damages, costs and expenses sustained by said receiver and the defendant John Fraser.

*Wm. McMichael,* for the appellant.

*R. S. Ransom,* for the respondents.

DAVIS, P. J. :

Francis O'Callaghan, the plaintiff in the action and appellant in this proceeding, commenced his action in this court for a dissolution

of the firm of O'Callaghan & Fraser, and praying for the appointment of a receiver of the assets and property of said firm. The respondent Abram Kling was afterwards by an order of the Special Term appointed such receiver and duly qualified as required in such order. In the order making such appointment it was further provided that the plaintiff Francis O'Callaghan and the defendant John Fraser be, and they were thereby enjoined and restrained from making any disposition of and interfering with any of the assets or property of such copartnership. The firm of O'Callaghan & Fraser were engaged in the leather business at 90 Chambers street in the city of New York, and in the same business at 458 and 460 North Third street in the city of Philadelphia. The receiver took possession of the property, books and papers of the firm in the city of New York and afterwards went to Philadelphia for the purpose of taking possession of the property of the firm in that city, and the plaintiff O'Callaghan formally delivered possession to the receiver of such property in that city. After the delivery of the property to the receiver, who put his agents in possession, steps were taken for a sale of the same at auction, and while such steps were being taken by and on behalf of the receiver, O'Callaghan became suspicious, as he says, that an intention existed to sacrifice the property by a hurried sale without proper notice; and for the purpose of preventing the sale he notified certain Philadelphia creditors to whom he had given, or then gave judgment notes for debts which he swears were *bona fide* and actually owing to a very considerable amount, and upon which, and as would seem according to the practice of that state, judgments were duly entered up and executions issued to the sheriff and the property levied upon and taken out of the possession of the receiver. There is a direct conflict in the affidavits between O'Callaghan and Fraser as to the *bona fides* of the indebtedness for which the judgment notes were given, Fraser swearing, in substance, that the debts had no existence but were wholly fictitious, and O'Callaghan swearing that they were *bona fide* debts actually owing by the firm to Philadelphia creditors.

J. M. Moyer, the attorney who entered up the judgments in favor of the Pennsylvania creditors, swears, in substance, that he was the attorney for three of the judgment creditors, and that when he was informed that proceedings had been instituted in the Supreme

Court of New York for the appointment of a receiver he called on O'Callaghan for a settlement of the account, and insisted on a confession of judgment in favor of his clients for the amounts due to them; that O'Callaghan refused to give such confession for the reason that proceedings were pending between him and his partner in New York and that it might complicate such proceedings; that deponent then threatened to sue out writs of attachment in each case, as provided by the laws of Pennsylvania, and declared that he would not allow the firm property to be taken out of that State into a foreign jurisdiction; that O'Callaghan being thus pressed by him signed the judgment notes; that O'Callaghan stated to him that the firm was indebted to him (O'Callaghan), as administrator of the estate of John Dinsmore, deceased, in the sum of $3,417, money belonging to said estate, and that he would not give judgments to others without providing for said estate, and that thereupon Moyer, the attorney, suggested that a judgment note be also given for the amount due said estate, and thereupon a judgment note was given for such amount; that upon entering up the judgments writs of *fi. fa.* or execution were placed in the hands of the sheriff, to be levied upon the goods and property that had been delivered to the receiver, who took the same into his possession; that afterwards, when the receiver was in Philadelphia, the attorney proposed to him that if he would procure his appointment by the courts of Philadelphia that the estate of O'Callaghan and Fraser should be sold and administered by the receiver, subject to the rights and liens acquired by virtue of the executions; that said proposition was favorably received by said receiver and referred by him to his attorney, one George Walter Smith, who also acquiesced in the proposition and prepared a petition to the Common Pleas of Philadelphia for said appointment; that said petition was drafted by Smith and submitted to the receiver for his approval, and the same was approved by him, but, in substance, that nothing further had been done.

Upon the hearing of the motion in the contempt proceedings a reference was made to a referee before whom a hearing would seem to have been had and much testimony taken, but no part of the testimony is contained in the papers on this appeal. The referee reported to the effect that the property in Philadelphia belonged to

the firm who were doing business there ; that O'Callaghan was in actual possession and had full control and authority over the property and transferred and delivered the same to Kling, as receiver ; that the receiver on the 2d of August, 1884, received and took the actual possession and custody of said goods, and continued to hold and. have the same in his possession and custody up to the 7th day of August, 1884 ; that O'Callaghan, after he had transferred and delivered said goods, caused such proceedings to be taken and had in the courts of the State of Pennsylvania, and certain process to be issued out of said courts to the sheriff of the city of Philadelphia, under and by virtue of which said sheriff was directed and required to seize and take from and out of the possession and custody of said Abram Kling, as such receiver as aforesaid, said goods so as aforesaid transferred and delivered to said Kling, as such receiver, by said Francis O'Callaghan, on · said 2d day of August, 1884 ; that on the 7th of August, 1884, the sheriff levied and took possession of the goods, and has ever since deprived the receiver of the possession and custody of the same, and the same are now in the possession and custody of the sheriff under and by virtue of the process issued to him out of the courts of Pennsylvania ; that the goods were at the time of the value of $25,000 ; that the costs and expenses of said receiver of selling and converting the goods into money would have been $2,500 ; that the actual loss and injury produced to the defendant John Fraser, and to Abram Kling, as said receiver, by the acts of said Francis O'Callaghan, amounted to $22,500 ; and that the costs and expenses of the proceedings in contempt and of the reference amounted to $542.20. Upon this state of facts the court confirmed the report (to which no exceptions appear to have been taken), with costs, and afterwards by order directed that the plaintiff O'Callaghan within five days pay over to the receiver the sum of $23,042.20 for the damages, costs and expenses sustained by the receiver and said defendant. This appeal is from those orders.

The order appointing the receiver had no extra territorial effect and did not confer upon him authority to go into a foreign jurisdiction and take possession of the property by virtue of such order. (*Hibernia Bank* v. *Mechanics' Bank*, 21 Hun, 167 ; *Green* v. *Van Buskirk*, 7 Wall., 139 ; *Hervey* v. *R. I. Locomotive Works*, 93 U. S., 664 ; *Simpkins* v. *Gold Co*, 50 How. Pr., 56.) The receiver could

not, therefore, have taken possession of the property of the firm in the State of Pennsylvania by virtue of the order and hold the same as against the claims of the Pennsylvania creditors. But it appears without dispute that the plaintiff O'Callaghan delivered the property into the possession of the receiver voluntarily for the purpose of having the same applied as assets of the firm to the benefit of its creditors. This act, we think, was lawful and valid as between him and the receiver, and under it the receiver was entitled to take and hold possession of the property as against the plaintiff who had thus voluntarily put the same into his possession. But that act could have no conclusive force upon the question of the rights of the Pennsylvania creditors. They would, we think, still have the right to attach the property and hold the same, notwithstanding the receiver's possession, so long as it remained within the jurisdiction of the courts of that State, and a levy thereon upon execution issued upon a valid judgment by such courts would give a superior lien to any possessed by the receiver under the order of appointment here, and the delivery of possession by O'Callaghan. The confession of a judgment in the form authorized by the laws of Pennsylvania in favor of any creditor of the firm for a *bona fide* indebtedness of the firm, would not in our judgment be a contempt of the courts of this State, although the express object of O'Callaghan might be to confer on the creditor the power to issue an execution to seize the goods in the receiver's hands. Certainly, if the Pennyslvania creditors of the firm could have sued out attachments against the firm and seized the goods thereon and held them, despite the receiver's claim, their rights cannot be impaired by the fact that a confession of judgment has given them a speedier and a less expensive remedy by levy under execution. We are of opinion that the mere confession of judgment by the debtor for an actual indebtedness upon which such an attachment might have issued does not subject him to punishment for contempt in violating the injunction, although his intention was thereby to give the creditors of the firm in Pennsylvania an opportunity to enforce their superior legal rights against the firm property in that State. The injunction restrained him absolutely from disposing of or meddling with any property of the firm within the jurisdiction of our court. To such property the receiver took title immediately

upon his qualifying by operation of his order of appointment. But he took no such unqualified title to property of the firm outside of our jurisdiction, for the order could have no such extra territorial effect, and consequently the injunction of the order cannot legally be claimed to have extended to it. The delivery of possession to the receiver as such by the plaintiff of the property in Pennsylvania was sufficient to confer on the receiver all the rights O'Callaghan had in such property. But it could not impair or embarrass the rights of the Pennsylvania creditors, if they were exercised at any time before the actual disposition of the property or its transfer to the territorial jurisdiction of our courts. This court cannot, therefore, treat the lawful act of any creditor in Pennsylvania, in seizing the goods by virtue of any legal process, although instigated and caused by the act of the debtor, as a contempt; because the seizure of the property and its removal by creditors cannot be said to be a deprivation of any legal right possessed by the receiver. The violent or forcible taking of possession of the property, by the debtor himself after such delivery, for the purpose of depriving the receiver of it might with propriety be regarded as a violation of the receiver's rights. But it is a different thing when with or without his co-operation the Pennsylvania creditors step in to exercise a superior legal right which they possess under the laws of the state, while the property remains within that jurisdiction.

The question of contempt, therefore, must depend, we think, upon the question whether or not the judgments confessed upon which the executions issued were for an actual or a fictitious and fabricated indebtedness of the firm. If the debtor, with a view to prevent the receiver from exercising the rights with which he had himself clothed him over the property in Philadelphia, perpetrated the alleged fraud by confessing judgments in the name of the firm, where no debts in fact existed, so that in law and equity the fictitious creditors had no rights which courts either there or here, are bound to or would respect, then we are of opinion that his act would be of a character which the courts of this State would treat as an interference with the rights of the receiver and a violation of the injunction. On this question the referee has not passed at all, and the affidavits are in direct conflict, the one partner swearing

that the debts were *bona fide* and actually owing to the Philadelphia creditors, and the other swearing that such debts had no existence against the firm. The testimony of the attorney, by whom the judgments were entered up, tends to corroborate the affidavit of O'Callaghan.

The court below does not seem to have regarded this question as of any importance, but held, as appears from the opinion of the learned judge, that the fact that O'Callaghan, by confessing the judgments, helped the creditors to seize the goods on execution, is sufficient to charge him in this proceeding for contempt, with the full value of such goods as the amount of injury sustained by the receiver and the other member of the firm, notwithstanding such goods were applied to the payment of debts, which, if valid, had a superior claim against the goods. We think the court should have proceeded to inquire, by reference or otherwise, and determine whether or not the judgments so confessed were fraudulent and unfounded.

But assuming that the act of O'Callaghan, in confessing the judgments, was a contempt of the court punishable by a fine, the question of the *bona fides* of the indebtedness would also, we think, be important for the purpose of ascertaining the damages sustained by the receiver and the copartner, because if the goods were seized upon lawful process by *bona fide* creditors, their application to extinguish the debts of such creditors whose rights as citizens of Philadelphia, where the property was located, would be superior to those of the receiver would be a circumstance tending to diminish the damages, if any, sustained. The application would pay debts, and having that effect it certainly would not follow, as a matter of course, that one member of the firm should be fined to the full extent of the whole property seized in case it were applied in payment of an actual firm indebtedness. For these reasons, also, the question of the *bona fides* of the debts for which the judgments were confessed is an important and material one to be determined.

We think the order must be reversed and case remanded to the referee for further hearing.

BRADY and DANIELS, JJ., concurred.

Order reversed and case remanded to referee for further hearing, cost of appeal to abide event.