## SMITH v. NEW YORK LIFE INS. CO

### (Circuit Court, N. D. California. June 26, 1893.)

### No. 11,450.

1. **ADMINISTRATORS — ADMINISTRATION IN DIFFERENT STATES — SUITS ON LIFE INSURANCE POLICY.**
   A widow, shortly after her husband's death, removed from Illinois to California, taking with her a policy of insurance on her husband's life, and there took out letters of administration, and brought suit on the policy. In the mean time an administrator had been appointed in Illinois, and had there brought suit on the policy. *Held,* that the pendency of the Illinois suit was no bar to the California suit, for the policy was assets of the estate in the latter state, and the issuance of the letters of administration was legal. Insurance Co. v. Woodworth, 4 Sup. Ct. Rep. 364, 111 U. S. 138, followed.

2. **SAME — SUITS BY ADMINISTRATOR — FRAUDULENT CONVEYANCES.**
   The California suit could not be defeated on the ground that the deceased, before his death, had assigned the policy to a third person, it appearing that such assignment was made for the purpose of defrauding his creditors, of whom his wife, the plaintiff, was one; for Civil Code Cal. § 3439, makes all transfers of property with intent to defraud any creditor void as to all creditors; and Code Civil Proc. § 1589, makes it the duty of an administrator, when there is a deficiency of assets, to sue for all property conveyed by the decedent for the purpose of defrauding his creditors.

3. **SAME — FRAUDULENT CONVEYANCES — CONFLICT OF LAWS.**
   The alleged fact that the conveyance was valid by the law of Illinois, where it was made, was immaterial, for the laws of Illinois could not affect property and credits in California, against the express provisions of the California statute.

4. **FRAUDULENT CONVEYANCES — EVIDENCE.**
   A husband, being indebted to his wife, who was about to institute proceedings against him for divorce, gave to a third person a bill of sale of all his property, worth nearly $12,000, of which $10,000 was practically in money, in payment of a debt of $3,400. *Held,* that the conveyance was void, as being made with intent to defraud his wife of her claim.

5. **SAME — BILL OF SALE.**
   The fact that the bill of sale was ambiguous, so as to make it doubtful whether $5,000 in money belonging to the seller was intended to be conveyed, would not prevent the instrument from being invalid when it clearly appeared from parol evidence that it was the intention of the parties to include the $5,000.

At Law. Action by Eudora V. Smith against the New York Life Insurance Company to recover on a policy of insurance. Jury waived, and trial to the court. Judgment for plaintiff.

Henry N. Clement, for plaintiff.
Wilson & McCutchen, for defendant.

McKENNA, Circuit Judge, (orally.) Plaintiff sues as administratrix of the estate of William F. Smith, deceased, to recover the sum

of $5,800, alleged to be due on a life insurance policy. At the time of the issuance of the policy, and at the time of his death, Smith was a resident of Chicago, Ill. Negotiations, the details of which are unimportant here, were pending between him and his wife, the plaintiff, looking to a divorce between them, she only having grounds therefor. Upon obtaining the divorce she was to receive $5,000 in money and the insurance policy, in trust for their son, who lived with her in this state. As assurance to plaintiff, the policy was deposited with Mr. Campbell and the money with Mr. Lynch, in this state. Dr. Smith died before the proceedings for divorce were instituted. To obtain the $5,000, he borrowed on 10th of March, 1891, $1,700 of one Dr. J. B. Murphy, of which $300 was returned next day, leaving a balance of $1,400. Within a few days afterwards he borrowed $2,000 of the Ft. Dearborn National Bank of Chicago, upon a note signed by Dr. Murphy and himself, which note was afterwards taken up, and Dr. Murphy's personal note substituted for it. On April 4, 1891, Dr. Smith executed and delivered the following instrument to Dr. Murphy:

"Chicago, April 4, 1891.

"For value received, I hereby sell, assign, and transfer to John B. Murphy all of the property, effects, choses in action, and things of value hereinafter mentioned, and all my right, title, and interest therein: A judgment note, made by Morris J. Allburger for $8,700 or thereabouts; a policy in the N. Y. Mutual Insurance Company for $5,000 or thereabouts; accounts due me as shown by my books, and said books; my horse and buggy; all my stock bonds in all corporations and associations; all my library, books, instruments, office furniture, and effects of every kind soever. And I hereby authorize said Murphy to take immediate possession thereof, or possession thereof at any time hereafter.                              Wm. F. Smith.. [Seal.]"

This bill of sale is set up as a defense by the defendant, claiming it to be an assignment of the policy. There is no doubt the policy referred to is the policy sued on in this case. At the time of the execution of said bill of sale, Smith made his last will, by which bequeathed all his estate to Elizabeth C. Merrill, subject to the payment to Dr. Murphy of $3,400, $50 to his son, and $50 to plaintiff, whom he described as formerly his wife. He appointed an executor, but the latter declined to act, and letters of administration with the will annexed were taken out by the Jennings Trust Company of Chicago, who brought suit on the policy of insurance in Illinois against defendant. This suit is also pleaded as a defense, and it is hence contended that the power to recover on the policy is in the Illinois administrator, where Smith resided and died, and not in California, where the policy was at the time of his death, and now is.

In the case of Insurance Co. v. Woodworth, 111 U. S. 138, 4 Sup. Ct. Rep. 364, one Ann E. Woodworth was insured in the New England Mutual Life Insurance Company, she being at that time a resident and domiciled in the state of Michigan. She died in Seneca Falls, N. Y. After her death her husband removed to the state of Illinois, and took out letters of administration, then having in his possession the policy of insurance. It was held by the court that

the policy was personal property, situate in Illinois, and the issuance of letters of administration in that state was legal, and that the defendant was properly sued in Illinois. The court further said: "Payment of this debt to the administrator appointed in Illinois will be good against any administrator appointed elsewhere." The policy of insurance sued on in this case, therefore, is undoubtedly assets of the estate in California, and the plaintiff is entitled to recover, unless the assignment to Dr. Murphy conveyed the policy to him. The plaintiff, however, contends that the assignment was made to delay and defraud her as a creditor of the assignee. By section 3439 of the Civil Code of this state, "every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their successors in interest," and section 1589, Code Civil Proc., requires an executor or administrator, when there is a deficiency of assets, to sue and recover all goods, chattels, rights, or credits which have been conveyed by decedent in his lifetime with intent to defraud his creditors, or to avoid any right, debt, or duty of any person.

The plaintiff was not only the wife of decedent, but she was a creditor also, she having obtained a judgment against him for alimony, which, at the time of his death, was unpaid; and the evidence, in my opinion, shows that the assignment to Dr. Murphy was made to defraud her, and to give his property, after the satisfaction of the doctor's claim, to Miss Merrill, the residuary legatee of his will. A motive for this purpose the testimony of witnesses for defendant supplies. To the lawyer who drew the assignment and will Dr. Smith expressed the utmost aversion for his wife, the utmost affection for Miss Merrill. He virtually disinherited his minor son. The sum of $50, which he bequeathed to him, was not a substantial bequest.

Of the property described in the bill of sale a portion exclusive of stock was sold for $1,350. Certain of the stocks were sold for $380. The other stocks are said to be worthless, and the judgment against Allburger is also said to be worthless. The policy of insurance was good, absolutely good, for $5,000, making, therefore, property to the value of $6,730 conveyed for $3,400,—not to secure, but to pay $3,400,—for Dr. Murphy distinctly testifies that the bill of sale was payment, not security. That is $3,330 more than Dr. Smith owed Dr. Murphy. The disproportion was greater, if we include the $5,000 in money which was in the hands of Mr. Lynch. That this sum was intended to be conveyed the defendant denies, but the evidence establishes it. The bill of sale says, among other things, "All my library, books, instruments, office furniture, and effects of every kind soever." This is ambiguous. Considering the instrument alone, whether the word "effects" is to be regarded as independent and as comprehending all other property of Dr. Smith, or whether it is to be limited by the word "office," and be confined to office effects, is disputable; but what

the parties intended to be conveyed is not disputable, and, if the purpose was fraudulent, a mistake in executing it did not alter its character. The lawyer who drafted the bill of sale testifies how it came to be executed, and what was said when it was delivered. His testimony is: "Doctor Smith said, addressing himself to Doctor Murphy: 'Doctor, in payment for the debt I owe you, * * * I desire to execute and deliver to you a bill of sale of all of my property of every kind, no matter where the same may be, and everything of value that I have got.'" Language could hardly be more comprehensive. It is emphasized further by Dr. Murphy's reply. He replied: "If you have transferred everything to me that you have, I cannot expect any more from you. * * *" Other witnesses confirm this testimony, but it is not necessary to quote them. Indeed, that the bill of sale does not, or was not intended to, convey the $5,000 in money, is the excuse of the defendant. It never was the excuse of Dr. Murphy. He always claimed, and still claims, the $5,000 in money, and by the claim justifies acts which certainly otherwise would be inconsistent with the character of the bill of sale as payment, which, as we have seen, he testified it was. I have no doubt, therefore, that the bill of sale, no matter what its language alone may justify, was intended to convey the $5,000 in money as well as all other property of Dr. Smith; and it would be an extreme credulity to believe that he meant only to pay Dr. Murphy, when he conveyed to him $11,730, for an indebtedness of $3,400, and practically $10,-000 of the sum in money. If it be said that litigation with the plaintiff was expected as to this amount, the answer is, the expense of litigation could not have been expected to reach the sum of $8,330,—the difference between $10,000 and the balance due Dr. Murphy after deducting the amount realized from the other property. The conclusion deduced from the disproportion of the property conveyed to the amount of the debt owed is confirmed by other evidence, which it is unnecessary to mention.

It is contended by defendant that the transfer was good by the laws of Illinois. It is not necessary to determine whether it was or not. The laws of Illinois cannot be extended to affect property and creditors in California against the provisions of section 3439. of the Civil Code of California. Green v. Van Buskirk, 7 Wall. 139; Whart. Confl. Laws, § 334 et seq., and cases cited. It is also contended that the bill of sale is only voidable, not void, and that it must prevail until set aside in a direct proceeding. This contention is not good. The Codes of this state make the transfer void, not voidable, and therefore it can have no effect whatever.

Judgment for plaintiff.

Mr. McCutchen:   I will ask for a stay of 20 days.

Mr. Cannon:   I do not think Mr. Clement will have any objection to it.

The Court:   Very well.