## PYEATT *et al. v.* POWELL.

### (*Circuit Court of Appeals, Eighth Circuit.* July 25, 1892.)

#### No. 103.

1. SUITS IN INDIAN TERRITORY—COMMON LAW TO GOVERN—LEX FORI.
   In actions in the federal courts in the Indian Territory, the rule of decision, in the absence of statute, or of proof of the laws, rules, or customs prevailing in the territory, is the common law, since it is the *lex fori.*

2. CHATTEL MORTGAGES—REGISTRY LAWS—INDIAN TERRITORY.
   The registry law of Kansas does not apply to a chattel mortgage executed in Kansas by a resident of the Indian Territory upon property situated in the territory.

3. SAME—VALIDITY AT COMMON LAW.
   At common law an unrecorded chattel mortgage, unaccompanied with possession of the chattels mortgaged, is *prima facie* fraudulent and void as to creditors of the mortgagor; but this presumption of fraud may be rebutted, and, where it is admitted or proved that such a mortgage is not fraudulent as to creditors, the mortgage may be sustained, notwithstanding the possession in the mortgagor.

4. SAME—VESTING OF TITLE.
   At common law a chattel mortgage vests the title conditionally in the mortgagee, which title, in case of default, becomes absolute; and therefore a mortgagee of domestic animals is entitled, after default, to the increase thereof.

5. SAME—ATTACHMENT—INSTRUCTIONS.
   In an action by the mortgagee in such case to recover the property from creditors who attached it after default, defendants were not prejudiced by a charge that plaintiff was entitled to recover if defendants had knowledge of the mortgage before bringing their suit, for the right to recover was complete, whether defendants had such knowledge or not.

6. SAME—PLEADING.
   In such an action it was competent for plaintiff to recover under the mortgage upon general allegations of title and right to immediate possession.

In Error to the United States Court in the Indian Territory.

Action of replevin by Warren C. Powell against Henry C. Pyeatt and James C. Kirby. Verdict and judgment for plaintiff. Defendants bring error. Affirmed.

Statement by SANBORN, Circuit Judge:

The defendant in error brought an action of replevin for certain mares and colts of the value of about $4,000, in the United States Court in the Indian Territory, against the marshal, who had seized them on October 4, 1889, under an execution issued out of that court upon a judgment in favor of the plaintiffs in error, and against William P. McClellan, for $7,598.07. Plaintiff in his complaint alleged that he was the owner and entitled to the immediate possession of the animals, and plaintiffs

in error, who were by order of the court substituted for the marshal as defendants, in their answer denied the plaintiff's allegations. On the trial it was established by undisputed evidence that on July 18, 1888, William P. McClellan was justly indebted to the plaintiff in the sum of $4,936.11, and that on that day at Coffeeville, in the state of Kansas, he gave the plaintiff his two promissory notes for this aggregate amount, payable in a year, and in good faith made and delivered to him his chattel mortgage on the mares and colts that were then in being to secure these notes; that the mortgage provided that the mortgagor should retain possession of the property until default, and upon payment of the notes it should be void; that McClellan resided in the Indian Territory, and the mortgaged property at the date of the mortgage was, and continued to remain, in that territory; that nothing was ever paid on this debt before the levy was made on October 4, 1889, in any other way than by the taking of the property itself by the mortgagee; and that the defendants had actual notice of the mortgage before they brought the suit, which resulted in the judgment under which the levy was made on the property. There was evidence tending to show that in the spring or early summer of 1889 McClellan delivered to the plaintiff possession of all the mortgaged property under an agreement that either he or the plaintiff might sell it if possible, and apply the proceeds on the debt, and, if not sold before the notes fell due, plaintiff should credit McClellan $4,500 on the notes for this property, but the *bona fides* of this transfer was denied. That question, and all others within the issues, were submitted to the jury, and a verdict and judgment rendered for the plaintiff, to reverse which this writ was sued out. A part of the colts in controversy were foaled by the mortgaged mares in the spring of 1889.

*John H. Rogers,* for plaintiffs in error.

*W. M. Cravens* and *George E. Nelson,* for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

There are 43 assignments of error in this case, but in the view taken by the court it will be necessary to consider but 3. The thirty-second assignment is that the court erred in refusing to charge the jury as follows:

"The court instructs the jury that, under the law in force in the Indian Territory at the time of the execution of the mortgage introduced in evidence in this cause, and at the time of the levy of the execution of the defendants, Pyeatt and Kirby, the title and ownership of the mortgaged property remained in the mortgagor until default, and after default until the mortgagor took open and visible possession of the property mortgaged. If, therefore, you believe from the evidence that the mortgage did not expressly embrace the increase of the mares mortgaged, and that the mares remained after default in actual possession of the mortgagor, William P. McClellan, and so remained until the levy of the defendant's execution, the colts foaled in the spring of

1889 were liable to defendant's execution, and especially is this true if, at the time of the default or levy, it was no longer necessary for the colts to follow their dams for nurture."

There was no error in this refusal. Under the common law, whose rules must govern here, a mortgage of personal property vests the title in the mortgagee subject to be defeated upon compliance with its conditions, and upon a failure to comply therewith such title becomes absolute. Story, Bailm. § 287, and cases cited; *Stewart* v. *Hanson*, 35 Me. 506; *Talbot* v. *De Forest*, 3 G. Greene, 586; *Flanders* v. *Barstow*, 18 Me. 357. The brood of all tame or domestic animals belongs to the owner of the dam or mother, and at common law the increase or young of mortgaged animals belongs to the mortgagee. *Cattle Co.* v. *Mann*, 130 U. S. 78, 9 Sup. Ct. Rep. 458; Jones, Chat. Mortg. § 149; *Cahoon* v. *Miers*, 67 Md. 573, 11 Atl. Rep. 278; *Evans* v. *Merriken*, 8 Gill. & J. 39.

That each of the following instructions was given by the court below to the jury is also assigned as error:

"The court further instructs the jury that the mortgage adduced and read in evidence by the plaintiff, Powell, contains a provision for the retention and possession of the mortgaged property by the mortgagor, McClellan, until the happening of some one of the events mentioned therein to cause a default; therefore the possession of the property by the mortgagor is not inconsistent with the terms of the mortgage, and the court pronounces the mortgage valid on its face, and binding between Powell and McClellan; and if the jury shall believe from the evidence that on the 18th day of July, 1888, said McClellan was justly indebted to said Powell in the sums of money for which said two notes which were read in evidence were executed, and that said mortgage was given in good faith to secure the payment of said notes, and if the jury shall also believe from the evidence that defendants Kirby and Pyeatt had actual knowledge and knew of said mortgage before the bringing of their suit and the obtaining of their judgment against the mortgagor, McClellan, in this court, then the mortgaged property should not be held subject to their execution, and the jury should find for the plaintiff, Powell. The court further instructs the jury that if you shall believe from the evidence that William P. McClellan, on the 18th day of July, 1888, was justly indebted to the plaintiff, Warren C. Powell, in the sum of forty-nine hundred and thirty-six dollars and eleven cents, as evidenced by the two promissory notes adduced and read in evidence on this trial, and that said McClellan executed the mortgage read to the jury to secure the payment of said notes, and that defendants Kirby and Pyeatt had actual notice and knew of said mortgage before the bringing of their suit and obtaining their judgment against the mortgagor in this court, and the jury shall also believe that said notes and mortgage were past due and unpaid before the issuance of the execution read in evidence, then the mortgaged property was not subject to said execution, and the jury should find for the plaintiff, Powell."

The contention is that these instructions were erroneous on two grounds: *First,* because it was not competent for plaintiff to recover on this mortgage under his pleading; *second,* because it is claimed that this mortgage, which was executed in Kansas, was void as to the creditors of McClellan, because it was never filed as required by the following provisions of the statutes of Kansas:

"Every mortgage or conveyance intended to operate as a mortgage of personal property which shall not be accompanied by an immediate delivery, and

be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated, or, if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident." Gen. St. Kan. 1889, § 3903.

As to the first ground, it is sufficient to say that the notes and mortgage were introduced in evidence without objection, and, under the plaintiff's allegation of title and right to the immediate possession of the mortgaged property, they were competent evidence on which he had a right to rely. The primary question on trial was whether plaintiff or defendants were entitled to the possession of the property, and this mortgage, if valid, and its past-due debt, if unpaid, established the plaintiff's contention. *Person* v. *Wright*, 35 Ark. 175; Story, Bailm. § 267; *Winchester* v. *Ball*, 54 Me. 558; *Talbot* v. *De Forest*, 3 G. Greene, 586.

As to the second ground, it must be borne in mind that the owner of the property mortgaged resided, and the mortgaged property itself was situated, in the Indian Territory. In that territory there was no registry statute,—no register with whom the mortgage could be filed. Between the mortgagor and mortgagee, the mortgage was valid and binding in Kansas and elsewhere without filing and without delivery of possession of the property mortgaged. *Denny* v. *Faulkner*, 22 Kan. 89; *Martin* v. *Ogden*, 41 Ark. 191, 192; *Hackett* v. *Manlove*, 14 Cal. 85. As this mortgage was valid and binding between the parties to it, it was so as to third parties, unless it was made void as to some third parties by some statute, law, or rule of public policy.

The registry act of Kansas was in the nature of a police regulation of that state. It was enacted to modify in that state the rule of the common law which made every chattel mortgage of articles capable of manual delivery, unaccompanied with change of possession of the things mortgaged, *prima facie* void as to creditors of, and *bona fide* purchasers from, the mortgagor; to give security to mortgagees by making their mortgages, unaccompanied with possession of the property, valid when recorded, and by the same record to protect creditors and purchasers against secret trusts. It never was intended to have, and has not, any extraterritorial force. So far as the rights of the creditors of McClellan, seeking to acquire liens on this property in the Indian Territory, were concerned, this registry law of Kansas was without effect. The mortgage and these rights of creditors were governed by the *lex domicilii* of the owner who mortgaged the property, and by the law of the place where the property was situated. They were governed by the law of the Indian Territory. *Green* v. *Van Buskirk*, 7 Wall. 139; *Clark* v. *Tarbell*, 58 N. H. 88; *Guillander* v. *Howell*, 35 N. Y. 657; *Whitman* v. *Conner*, 40 N. Y. Super. Ct. 339, 346; *Iron Works* v. *Warren*, 76 Ind. 512; *Martin* v. *Potter*, 34 Vt. 87; Tied. Sales, § 239; Jones, Chat. Mortg. § 305.

What, then, was the law of the Indian Territory on this subject in 1888 and 1889? Prior to the passage of the act of congress of May 2,

1890, (26 U. S. St. p. 94,) extending over this territory certain statutes of the state of Arkansas, there was no statute in operation in this territory upon any subject outside of those treated in the acts of the congress regulating intercourse with the Indians and punishing offenses against the United States. In the United States, in the absence of statutes, the presumption of the existence of the common law prevails in all the territory of the original colonies, and in all newly-acquired territory originally settled by Englishmen or their American descendants; but this presumption may not prevail in the Indian Territory, because, before its purchase by the United States, it was part of a territory settled by the subjects and governed by the laws of other nations.

There is, however, another well-settled principle, founded in reason and authority, upon which, in the federal courts, the common law must be held to govern the rights of these parties. It is that the *lex fori*, or, in other words, the laws of the country to whose courts the party appeals for redress, furnish in all cases, *prima facie*, the rule of decision. *Monroe* v. *Douglass*, 5 N. Y. 452; *The Scotland*, 105 U. S. 24, 30, 31; *Garner* v. *Wright*, 52 Ark. 388;[1] *Norris* v. *Harris*, 15 Cal. 254. In the federal courts, in the absence of statutes repealing or modifying it, the common law is the rule of decision and guide of action; and when, by the act of March 1, 1889, (25 U. S. St. p. 783,) the congress, with the assent of the Indians, created the court below for the Indian Territory, and conferred on it "jurisdiction in all civil cases between citizens of the United States who are residents of the Indian Territory, or between citizens of the United States, or of any state or territory, and any citizen of or persons residing or found in the Indian Territory," when the amount in controversy was $100 or over, we hold that it gave that court authority, and imposed upon it the duty, to apply the established rules and principles of the common law to the adjudication of those cases of which it was thus given jurisdiction, where, as in this case, no proof is made of the laws, rules, or customs obtaining in that territory.

The rule of the common law is that a mortgage of personal property, unaccompanied with possession, is *prima facie* void as to creditors of the mortgagor; yet the presumption of fraud arising from that circumstance may be rebutted by explanations showing the transaction to be fair and honest, and giving a reasonable account of the retention of possession. *Ryall* v. *Rolle*, 1 Atk. 165, 168; *Alton* v. *Harrison*, L. R. 4 Ch. App. 622, 626; *Martindale* v. *Booth*, 3 Barn. & Adol. 498, 506; *Hauselt* v. *Harrison*, 105 U. S. 401; *Warner* v. *Norton*, 20 How. 448, 460; *Martin* v. *Ogden*, 41 Ark. 191, 192; 2 Kent, Comm. 521. Thus, in *Ryall* v. *Rolle*, 1 Atk. 167, (decided in 1749,) the court said:

"The next question to be considered will be in relation to the condition of creditors when the debtor continues in possession of the goods mortgaged. This was fraudulent at common law, and 13 Eliz. c. 5, §§ 1, 2, provides against it, that it shall be void. There is no distinction whether the sale be

[1] 12 S. W. Rep. 785.

absolute or conditional. Courts of equity and juries are to consider, upon the whole evidence, whether the conveyance was made with a view to defraud or not."

This mortgage debt fell due July 18, 1889, and, if the mortgagor had possession after that date, he had no interest that was subject to levy and sale at common law if the mortgage was valid. Jones, Mortg. § 556, note 4, and cases cited. The result is that this mortgage was not void because it was not filed in the office of some register of deeds, as required by the Kansas statute. Aside from the possession of the mortgaged property by the mortgagor, which the mortgage by its terms provided for, there was no evidence at the trial tending to show that it was not made in good faith to secure a just debt, or that it was made with any intent to hinder, delay, or defraud creditors. On the oral argument in this court it was expressly conceded by counsel for defendants that there was no question of the good faith of the parties to the mortgage, or as to the validity of the debt, and in his brief he says:

"There is not a *scintilla* of evidence in the case that in July, 1888, McClellan did not owe Powell the amount of the notes secured by the mortgage read in evidence, or that they were not given in good faith."

It is clear that under this evidence and these concessions there was no question about the validity of the debt, or the fraudulent character of the mortgage as to creditors, to be submitted to the jury, and hence there could have been no prejudicial error in the instructions we have been considering. A chattel mortgage, not fraudulent as to creditors, made in good faith, to secure an honest debt, is at common law superior to a subsequent attachment of the same property by a creditor of the mortgagor.

It is true that it was not material whether the defendants were or were not notified of this mortgage after their debt accrued, and before they brought suit; but the charge of the court that this mortgage entitled the plaintiff to recover, if defendants were notified of it before suit, could do the defendants no injury, because, under the admissions as to its character, the mortgage entitled him to recover whether the defendants were notified of it or not. And for the same reason none of the other errors assigned in this action prejudiced the defendants, for it is conceded that, if the two instructions we have been considering are correct, the jury should have been instructed to return a verdict for the plaintiff. Error without prejudice is no ground for reversal, and for this reason we have not considered the assignments of error not above discussed, and the judgment below is affirmed.