CARTER vs UNITED STATES.

Opinion delivered October 3, 1896.

*1. Grand Jury—Plea in abatement.*

Appellant a citizen of the United States was first indicted by a grand jury composed in part of Chickasaw Indians by blood

He pleaded in abatement of this indictment that it was a nullity, because of this fact. The court sustained the plea and referred the case to a grand jury from which under the instructions of the court Chickasaw Indians by blood had been excluded. To the indictment returned by this grand jury, appellant filed his present plea. *Held*, That the exclusion of such persons from the grand jury, did not constitute reversible error.

2. *Members of Five Civilized Tribes Competent Grand Jurors.*

Members of the five civilized tribes by blood in the Indian Territory, not citizens of the United States when otherwise qualified as prescribed by the law, are competent as grand jurors in the United States Courts in the Indian Territory.

3. *Common Law Crime—Punishment for.*

The common law in regard to crimes and their punishment was put in force in the Indian Territory by the act of May 2, 1890, adopting Chap. 20 of Mansf. Dig., and one may be indicted and punished for an offense not defined by statute, but by the common law.

4. *Indictment—Time of Commission of Offense.*

The indictment alleges the commission of the offense, February 1, 1896, and on divers other days and times between said day and the day of filing the indictment, March 10, 1896. The evidence fails to show the commission of the offense between said dates, but shows its commission prior thereto. *Held*, Under § 2112 Mansf. Dig. that it was sufficient in this case to prove the commission of the offense before the filing of the indictment.

5. *Disorderly House Defined.*

See Thatcher vs United States, 48 Ark. 60.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

Wm. J. Carter appeals from a conviction on an indictment for maintaining a disorderly house. Affirmed.

*W. B. Johnson*, *W. I. Cruce*, and *Lee Cruce*, for appellant.

All offenses against the United States are of statutory origin. No common law offense can be committed against it. U. S. vs Britton 108 U. S. 206; United States vs Walsh, 5 Dill. 60; Wheaton vs Peters, 8 Pet. 658. The Federal Courts have no jurisdiction of common law offenses. Penn. vs Wheeling, Bridge Co., 13 How. 563. The courts of the United States must follow the statutes exclusively, using the common law only for definition of terms, rules, principles, and forms, but never as an ingredient of the offense itself. United States vs DeGroat, 30 Fed., 766; Commonwealth vs Webster, 5 Cush. 303; United States vs Dirkey, 1 McAlester 201. Although courts of the United States administer the common law in many cases, they can recognize as offenses against the nation, only those acts which are made criminal by their punishment provided for by acts of congress. Cooley Const. Lim. 30.

*A. C. Cruce*, for appellee.

1. All that is necessary is that the proof should show that the offense was committed within the statutory period of limitation. Bishop Crim., Proc., § 400.

2. Chap. 20 of Mansf. Dig., putting in force in Arkansas the common law of England, was adopted by the act of 1890. The Supreme Court of Arkansas in Vanderworker vs State, 13 Ark. 700 decides the common law of England was in force in that state. The constitutional provision of the state of New York which provides that the common law of England shall be and continue, the law of said state put in force in the state of New York the common law of Eng-

land. Levy vs McCartee, 6 Pet. 102. The common law can be adopted in places over which the United States has jurisdiction and made a part of the federal system by legislative adoption. Wheaton vs Peters, 8 Pet. 591.

3. Indians born members of any Indian Tribe within the United States which still holds their tribal relations are not citizens. 3 A. & E. Enc. of Law 425; Elk vs Wilkins, 112 U. S. 94; Cherokee vs Georgia, 5 Pet. 1; Worcester vs. Georgia, 6 Pet. 515; United States vs Rogers, 4 How. 567. No person shall be qualified to sit as a grand juror, unless he is an elector, a citizen of the county in which he is called to serve, etc. Mansf. Dig. § § 39, 67. A plea in abatement showing that a member of the grand jury was not a citizen of the state should be sustained. State vs Browne, 10 Ark. 78.

LEWIS, J. 1. Appellant is a citizen of the United States, residing in the Indian Territory. To the indictment herein he pleaded in abatement that it was of no force and effect, because returned by a grand jury from which were excluded, by direction of the court, members by blood of the Chickasaw Tribe of Indians, duly qualified as grand jurors. The facts set up in the plea were admitted, the plea overruled, and this action assigned as error. It appears from the record that appellant was first indicted for this offense by a grand jury composed in part of Chickasaw Indians by blood; that to this indictment appellant pleaded, in abatement, that it was a nullity because of this fact, that the court sustained the plea, referred the case to a grand jury, from which, under the instructions of the court to the jury commissioners, Chickasaw Indians by blood had been excluded. To the indictment returned by this grand jury appellant filed the present plea. If the court's action was erroneous, appellant can have no advantage from error thus expressly invited by him. Elliott, App. Proc. § 626. Apart

from this consideration, the question is settled, so far as this court is concerned, by provisions of Mansfield's Digest, put in force in this jurisdiction, as follows: Section 2123: "No indictment shall be void or voidable because any of the grand jury fail to possess any of the qualifications required by law." Sections 2454 and 2297, which enact that a judgment of conviction shall only be reversed for certain errors of law to the defendant's prejudice appearing upon the record.

**Grounds for reversing conviction.** The exclusion from the grand jury finding the indictment of persons qualified is not one of the errors enumerated. We are cited to decisions of the Arkansas courts holding adversely to the view here expressed, but such decisions were rendered before the adoption of the statutes above set out. It is plain from these statutes that the action of the trial court in the matter complained of does not constitute reversible error. These suggestions dispose, in this appeal, of the error assigned to the court's action; but as the question whether members by blood of the five civilized tribes, not citizens of the United States, but having the other qualifications prescribed by law, are competent grand jurors in the courts of the United States in the Indian Territory, constantly arises in those courts, we deem it proper to consider that question upon the merits.

The relation of the five civilized tribes to the United States has been defined by the Supreme Court. In the case of Mackey vs Coxe, 18 How. 100, that court declared with reference to the Cherokee country: "Such country, we think, may be considered a territory of the United States, within the act of 1812. In no respect can it be considered a foreign state or territory, as it is within our jurisdiction, and subject to our laws." In that case it was held that the laws and proceedings of the Cherokee territory, so far as they related to rights claimed under them, should be placed upon the same footing as those of other territories in the Union, that it is not a foreign, but a domestic, territory,—a terri

tory which originated under our constitution and laws. This doctrine is reaffirmed in the case of Mehlin vs Ice, 5 C. C. A. 403, 56 Fed. 19. The members by blood of these tribes are not citizens of the United States; yet neither are they aliens in the sense that the citizens of foreign and independent states are aliens. · They are, in the language of judicial declaration, "wards of the government." Their condition in regard to citizenship is that of minors born in this country. The minor may be relieved from disability, and given the full rights of citizenship by the exercise of legislative or judicial discretion. The Indian of these tribes may attain to it of his own volition. Subject to the provisions of treaties analogous to. the organic act under which other territories are erected, and which, like such acts, congress, if it so will, may abrogate or modify, and subject, further, to the fundamental limitations which inhered in the form and character of our institutions, congress has all the power of legislation over these tribes and the area occupied by them that is combined in the federal and state governments. Clinton vs Englebrecht, 13 Wall. 434; Murphy vs Ramsey, 114 U. S. 15, 5 Sup. Ct. 747; First Nat. Bank of Brunswick vs County of Yankton, 101·U. S. 129; Benner vs Porter, 9 How. 242; Cherokee Nation vs Southern Kansas Ry. Co., 135 U. S: 641, 10 Sup. Ct. 965; Whitney vs Robertson, 124 U. S. 190, 8 Sup. Ct. 456; Chae Chan Ping vs U. S., 130 U. S. 581, 9 Sup. Ct. 623.

Such being the relation of this territory to the Union, such the status of the Indians therein, and such the power of congress, a brief statement of the legislative provision bearing upon the question will aid in its solution. The act establishing the United States Court in the Indian Territory, adopted March 1, 1889, made no provision for impaneling a grand jury, but with reference to petit jurors enacted as follows: Section 8: "That all proceedings in · said court shall be held in the English language; and bona fide male

residents of the Indian Territory, over 21 years of age, and understanding the English language, sufficiently to comprehend the proceedings of the court, shall be competent to serve as jurors in said court, but shall be subject to exemption and challenge as provided by law in regard to jurors in the Western district of Arkansas. " Section 15: "That in all criminal trials had in said court, in which a jury shall be demanded, and in which the defendant or defendants shall be citizens of the United States, none but citizens of the United States shall be competent jurors. " The act of May 2, 1890, provided for the organization of a grand jury by adopting the title "Criminal Procedure" of Mansfield's Digest of the State of Arkansas, so far as applicable. This same act adopted chapter 90 (title "Jury") of Mansfield's Digest (which prescribes the qualifications of grand and petit jurors), with the limitation "when not locally inapplicable or in conflict with this act or with any law of congress relating to the subjects specially mentioned in this section. " The qualifications of grand and petit jurors prescribed by chapter 90 of Mansfield's Digest are that they shall be electors and citizens of the county in which they may be called to serve temperate, and of good behavior.

It will be seen from this resume, that the qualifications of the petit juror as fixed by the laws of Arkansas must yield to section 8 of the law of 1889, still in force. Under that section, Indians by blood, not citizens of the United States, are clearly competent as petit jurors in the courts of the United States in the Indian Territory in all civil cases and in all criminal cases in which citizens of the United States are not defendants. In the organization of grand juries in these courts, the requirements of the Arkansas law in the matter of electoral capacity and citizenship in the county in which the jurors may be called to serve is locally inapplicable to United States citizens in the Indian Territory, for the reason that they are neither electors in such

*Indians competent jurors in civil cases,*

territory, nor citizens of counties therein. If held to be in force as to citizens of the United States, a grand jury could not be lawfully impaneled in the Indian Territory. But, if the law is locally inapplicable to one class of residents, it must, in any correct use of speech, be held locally inapplicable as to all. It follows, therefore, that there is no citizenship qualification in the law regulating the organization of grand juries in this jurisdiction.

But it is urged in argument that this conclusion is impossible; that, in the nature of things, citizenship in the forum must be a prerequisite to service therein as a juror. Yet, as we have seen, persons not citizens of the United States are competent petit jurors in the United States Courts in the Indian Territory. Is it more anomalous that they should sit as grand jurors therein? So early as 1354 it was enacted in England (28 Edw. III.) that "in all manner of inquests and proofs which be to be taken or made amongst aliens and denizens, be they merchants or other, as well before the mayor of the staple as before any other justices or ministers, although the king be party, the one half of the inquest or proof shall be denizens, and the other half aliens, if so many aliens or foreigners be in the town or place where such inquest or proof is to be taken.    *    *    *" This statute was held to be in force in Pennsylvania by virtue of a law providing that "such of the statutes as have been in force in the late province of Pennsylvania should remain in force until altered by the legislature;" and a challenge to the array in the case of four Italians charged with murder was sustained, and a tales de mediatate lingua awarded. Respublica vs Mesca, 1 Dall. 73. It is not suggested that this statute is in force here, but it is referred to for the purpose of showing that the admission of persons not citizens, as jurors in the courts of the country, is not strange and unprecedented, but goes back almost to the beginning of our period of written law. In many states, under constitutional

or statutory provisions making citizenship a qualification of a grand juror, it has been decided that alienage disqualifies for such service. State vs Gibbs, 39 Iowa 318; State vs Cole, 17 Wis. 674; People vs Henderson, 28 Cal. 465; Reich vs State, 53 Ga. 73. In Indiana, under a statute declaring that good, reputable freeholders or householders, resident in the county where selected, and taxable therein, should be qualified as grand jurors, it was held that alienage did not disqualify for such service. Mr. Wharton says: "It is not necessary at common law that any part of a grand jury finding a bill against aliens should be aliens. Such, it has been determined, is also the rule in Pennsylvania. The doctrine that all the grand jurors should be inhabitants of the county for which they are sworn to inquire, admits, it would seem of no qualification." Whart. Cr. Pl. & Prac. § 352.

This being the condition of the law affecting the question, their being neither express legislative direction rendering Indians by blood, not citizens, competent as grand jurors, nor inhibitions against their serving in such capacity the question of their competency, when in other respects qualified as required by law, should be determined by the relation of the territory and members of the five civilized tribes to the Union, and by the general legislative policy of the government touching the question, if such has been manifested. What the relation of these tribes and their members to this government is has already been shown. On the other hand, the legislative policy towards the question is we think, clear. Congress, when providing for petit jurors recognized the intolerable hardship of bringing the Indian in their own country, as litigants in civil actions, into court which should pass upon their highest rights, but excluding them from its juries. It prevented this injustice by rendering them competent as jurors. Every consideration of justice requires that, in the absence of express direction, the policy thus indicated should be extended to the organization of

grand juries.   Indians by blood in the territory of the five civilized tribes have and exhibit the same interest in the enforcement of the law and in the protection of personal and property rights as the United States citizen resident therein.   In some sense they have the higher interest, because they are the owners of the soil, and constitute the more fixed and permanent population.   They possess in a satisfactory measure the other requirements of the law, in the way of intelligence, honesty, and zeal for social order.   We conclude that members of these tribes by blood, not citizens of the United States, when otherwise qualified as prescribed by law, are competent as grand jurors in the United States Courts in the Indian Territory.

<em>Indians competent grand jurors.</em>

2.   Appellant is indicted for an offense not defined by statute, but by the common law.   The act of congress of May 2, 1890, adopted chapter 20 (title "Common Law") of Mansfield's Digest of the Laws of Arkansas, subject to the limitation when not locally inapplicable or in conflict with that act or with any law of congress relating to the subjects mentioned.   Section 566, c. 20, Mansf. Dig., is as follows: "The common law of England, so far as the same is applicable and of a general nature, and all statutes of the British parliament in aid of or to supply the defects of the common law made prior to the fourth year of James I., that are applicable to our own form of government, of a general nature, and not local to that kingdom, and not inconsistent with the constitution and laws of the United States, or the constitution and laws of this state, shall be the rule of decision in this state, unless altered or repealed by the general assembly in this state." Section 567. Id.: "In cases of crimes and misdemeanors committed in this state, the punishment of which has not been provided for by statute, the court having the jurisdiction thereof shall proceed to punish the offender under the provisions of the common or statute law put in force in this state by this act, but the punishment in

such cases shall only be by fine and imprisonment, and in such cases the fine shall not exceed one hundred dollars, and the imprisonment shall not exceed three months." It is contended under these statutes that the common law is unknown to the constitution and to the fundamental principles of the federal system, and hence could not be imported by act of congress into the Indian Territory. That congress has the power so to do long since passed beyond the point of controversy. Clinton vs Englebrecht, 13 Wall. 434; Pyeatt vs Powell, 2 C. C. A. 367, 51 Fed. 551; McKennon vs Winn (Okl.) 33 Pac. 582; and authorities cited above. It is further urged that the statutes of Arkansas above set out do not adopt the common law for the purpose of defining and prohibiting offenses, but simply to fix the punishment of offenses, defined by statute, which had omitted to declare the punishment therefor. This might be the correct interpretation of section 567 standing alone, but it ignores section 566 entirely. Force must be given to both sections, if this be possible. To hold that the first section puts in force common-law prohibitions of offenses which the statutes have not defined, and that the second provides common-law punishment for offenses which the statutes have defined, but for which they have not provided penalties, does not make the two sections inconsistent, but does make them both effective. Appellant's contention cannot be sustained. Vanderworker vs State, 13 Ark. 700.

<span style="margin">Common law offenses punishable.</span>

3. The indictment was filed on March 10, 1896. It alleged the commission of the offense on the 1st day of February, 1896, and on divers other days and times between said day and the day of filing the indictment. The evidence fails to show the commission of the offense between the above dates, but shows its commission prior thereto. It is urged that the proof under the indictment is inadequate to sustain the conviction. There are authorities which support this contention. Com. vs Briggs, 11 Metc. (Mass.) 573

Holbrook vs Knight, 67 Me. 244; Fleming vs State, 28 Tex. App. 234, 12 S. W. 605. The ruling in these cases is severely criticised by Mr. Bishop in his work on Criminal Procedure (section 402,) as opposed to sound reason. In New Hampshire it is held that, if the continuando be unnecessary, it may be treated as surplusage. Except in Massachusetts, a continuando is only necessary when a judgment of abatement of the nuisance is sought. 1 Bish. Cr. Proc. § 397. No such judgment was prayed for or given in this case. Section 2112, St. Ark., provides: "The statement in the indictment as to the time at which the offense was committed is not material, further than as a statement that it was committed before the time of finding the indictment, except where the time is a material ingredient of the offense." Time is not ordinarily a material ingredient of the offense of maintaining a common nuisance, and it cannot be so regarded in this case, unless it has been made so by being pleaded. We think that the continuando in the allegation of time, being unnecessary, should be treated as surplusage, rather than as effectual to make the allegation of time in the indictment material, and therefore essential to be proven as averred. This conclusion is supported by the letter, as it is in harmony with the spirit, of the Arkansas statute, which, both in civil and in criminal actions, avoids the sacrifice of the substance to technical subtleties. Should the allegation of time as made in this indictment lead to a defendant's surprise, of which there is no suggestion in this record, a different question might be presented.

<span style="float:right">Indictments—<br>Time of committing offense</span>

These remarks dispose also of the objection to the admission of testimony showing the commission of the offense prior to the dates alleged in the indictment.

4. The definition of a disorderly house, and the statement in the court's charge as to when the same might be held in law a common nuisance, is supported by the opinion

(25)

in Thatcher vs State, 48 Ark. 60, 2 S. W. 343, which we ap
prove.    The charge requested by appellant and  refused b
the  court is in conflict with that decision, and was properl
refused.

We have considered the other errors assigned, and w
find none for which the judgment should be reversed.    Th
evidence is adequate to support the verdict.    The judgmer
is affirmed.

SPRINGER, C. J., concurs.