Mr.' Justice DAVIS
 

 delivered the opinion of the court. ■
 

 That the controversy in this case was substantially ended when this court refused
 
 *
 
 to dismiss the writ of error for want of jurisdiction, is quite manifest by the effort which the learned counsel for the defendants in error now make, to escape the force of that decision.
 

 The question raised on the motion to dismiss was, whether the Supreme Court of New York, in this case, had decided against a right which Green claimed under the Constitution^ and an act of Congress. If it had, then this court had jurisdictiou to entertain the writ of error, otherwise not.
 

 It was insisted on the one side, and denied on the other, that the faith and credit which the judicial proceedings in the courts of the .State of Illinois had by law and usage in that State, were denied to them by the Supreme Court of New. York, in the decision which was rendered.
 

 Whether this was so or not, could only be- próperl'y considered when the case came to be heard on its merits; but this court, in denial of the motion to dismiss,
 
 held
 
 that ,the Supreme Court of New York necessarily decided
 
 what
 
 effect .the attachment proceedings in Illinois had.by the law arid usage in that'State; and as it,decided against
 
 the
 
 effect which Green claimed for them, this court had jurisdiction, under1 the clause of the Constitution which declares “ that full’faith and credit shall be given in each State to the public acts, records; and judicial proceedings in every other State,” and the act of Congress of 1790, which gives to those proceedings the same faith and credit in other States, that they have in the State in which they were rendered.
 

 This decision, supported as it was by reason and authority, left for consideration, on the hearing of the ease, the inquiry,
 
 *146
 
 whether the Supreme Court óf New York did give to the attachment proceedings in Illinois, the same’ effect' they would have received in the courts of that State.
 

 By the statutes of Illinois, any creditor can sue out a writ of attachment against a non-resident d.ebtór, under which The officer is required to seize and take possession of the. debtor’s property, and if the debtor cannot be served with process, he is notified by publication, and if he does not appear, the creditor, on making proper proof, is entitled to a judgment by default for his' claim, and a special execution is issued to sell the property attached. The judgment is not a lien upon any other property than that attached; nor can any other be taken in execution to satisfy it. These statutes further provide, that mortgages on personal property have no validity against the rights and interests of third persons, ■without being acknowledged and recorded,-'unless the property be delivered to and remain with the mortgagee.
 

 And so strict have the courts of Illinois been in construing the statute concerning chattel mortgages, that they have held,if the mortgage cannot be acknowledged in the manner required by the act, there is no way of making it effective, except to deliver the property, and that even actual notice of the mortgage to the creditor, if it is not properly recorded, will not prevent him from attaching and holding the property.
 
 *
 

 The policy of the law in Illinois wall not permit the owner of personal property to sell it and still continue in possession of it. If between the parties, without delivery, the sale is valid, it has no effect on third persons who, in good faith, get a lieu on it; for an attaching creditor stands in the light of a purchaser, and as such will be protected.
 
 †
 
 But it is unnecessary to cite any other judicial decisions of that State but the cases of
 
 Martin
 
 v.
 
 Dryden,
 

 ‡
 

 and
 
 Burnell
 
 v. Robertson,
 
 §
 
 which are admitted in the record to be a true exposition of the laws of Illinois on the subject, to establish that
 
 there
 
 the
 
 *147
 
 safes were subject to the process of. attachment, and that the proceedings in attachment took precedence of the prior unrecorded mortgage from Bates.
 

 If Green, at the date of the levy of his attachmént, did not know of this mortgage, and subsequently perfected'his attachment by judgment, execution, and sale, the attachment held the property, although at the date of the levy of- the execution he did know of it. The lien hé- acquired, as a
 
 bond fide
 
 creditor, when he levied his attachment without notice of the mortgage, he had the right to perfect and secure to himself, notwithstanding the fact that the mortgage existed, was known to him, before the judicial proceedings were completed. This doctrine has received the sanction of the highest court-in Illinois through a long’series of decisions, and "may well be considered the settled policy of the State on the subject of the transfer of personal property. If so, the-effect which the courts there would give to these proceedings in attachment, is too plain for controversy. If is clear, if Van Buskirk had selected Illinois, instead .of New York, to test the liability of these safes to seizure and. condemnation, on thé same evidence and pleadings, their seizure and condemnation would have been justified.
 

 It is true, the court in Illinois did not undertake-to settle, in the attachment suit the title to the property, for.that question was not involved in it, but when the true state of the .property was shown by other evidence, as was done in. this suit, then it was obvious that by the laws of Illinois it could be seized in attachment as Bates’s property.
 

 In order to give due force and effect to a judicial proceeding, it-is often necessary to show by evidence, outside of the record, the predicament of the property on which it operated. This was done in this case, and determined the effect .the attachment .proceedings in Illinois produced on«the safes,' which effect was denied to them by the Supreme Court of New York.
 

 At an early day in the history of this court, the act of Congress of 1790, which was passed in- execution of an ex-' press ■ power conferred by .the Constitution, received an i.n-'
 
 *148
 
 'terpretation which has never peen departed from,
 
 *
 
 and obtained its latest exposition in the case of
 
 Christmas
 
 v. Russell.
 
 †
 

 The act declares that the .record óf a judgment (authenticated in a particular manner), shall'have the same faith and credit as it has in the State coui’t from whence it is taken. And this court say: “ Congress have therefore declared the effect of the record, by de'claring what faith and credit shall b.e given to it;” and that
 
 “
 
 it is only necessary to inquireñu every case what is the effect of a judgment in the State where it is rendered.”
 

 It should be borne in mind in the discussion of this case, that the record in the attachment suit was not used as the foundation of an action, but for purposes of defence. Of course .Green could not sue Bates on it, because the court had no jurisdiction of his person; nor could it operate on any other property belonging to Bates than that which was attached. But, as by the, law of Illinois, Bates was the owner of the iron safes when the Writ of attachment w,as levied, and as Green- could and did lawfully attach them to satisfy his debt in a court which had jurisdiction'to render the judgment, and as the safes were lawfully sold to satisfy that judgment, it follows that when thus sold the .right of property in them was changed, and the title to them'became vested, in the purchasers at the sale. And as the effect of thb levy, judgment and sale is to protect Green if sued in the courts of Illinois, and these proceedings are produce^, for his own justification, it ought to require no argument to show that when sued in the court of another State-for the same transaction, and he justifies in the same manner, that he is also protected. Any other rule would destroy all safety in derivative titles, and deny to a State the power to regulate the transfer of personal property within its limits and to subject such property to legal proceedings.
 

 Attachment laws, to use the words of Chancellor Kent, áre legal modes of acquiring title to property by operation of law.” They exist in -every State for the furtherance of
 
 *149
 
 justice¿ with more or less of liberality to creditors. Arid, if the title acquired under the attachment laws of a State, and which is valid there,, is not to be held valid in every.other State, it were better that those'laws were abolished, for they would prove to' be but a snare and a delusion to the.creditor.
 

 ' The Vice-Chancellor of New York, in
 
 Cochran
 
 v.
 
 Fitch,
 

 *
 

 when discussing the effect of certain attachment proceedings in .the State of Connecticut, says: “ As there was no fraud shown, and the court in Connecticut had .undoubted jurisdiction
 
 in rem
 
 against the complainant, it follows that I am bound in this State to' give to the proceedings of that court the' same faith and credit they would have in Connecticut.” As some "of the judges of New York had spoken of these, proceedings in another State, without service of propess or appearance,
 
 tis
 
 being'nullities in that State and void, the same vice-chancellor says: “But these expressions are all to be 'referred to the crises then under consideration, and it will be found that all. those were suits brought-upon the foreign judgment as a debt, to enforce it against thep person of the. debtor, in which it was attempted to- set up the judgment as one binding on the pérson.”
 

 The distinction between the effect of proceedings by for-, eign attachments,'when offered in evidence as the ground of recovery against the person of the debtor, and their effect when used in defence to justify the conduct of the attaching creditor, is manifest and supported by authority.
 
 †
 
 Chief Justice Parker, in
 
 Hall
 
 v.
 
 Williams,
 

 ‡
 

 speaking of the force and effect of judgments ,recovered in other States, saysi “Such a judgment is to conclude as to everything over which the court which rendered it had jurisdiction. If the property of the citizen of another State, within its .lawful jurisdiction, is condemned by. lawful process there, the decree is final and conclusive.” .
 

 It would seem to be unnecessary-to continue this investi-' gation further, but our great respect for the learned court
 
 *150
 
 that pronounced the judgment in this case, induces us to notice the ground on which they rested their decision! It is, that the law of the State off New York is to govern this transaction, and not the law of the State of Illinois where the property was situated; and as, by the law of New York, Bates ha'd no property in the safes at the date of the levy of the writ of attachment, therefore none could be acquired by the attachment. The theory of- the case is, that the voluntary transfer of personal property is to be governed everywhere by the law of the owner’s domicile, and this theory proceeds on the .fiction of law that the domicile of the owner draws to it the personal estate which he owns wherever it may happen to be located. But this fiction is by no means of universal application, and as Judge Story says, “yields whenever it is necessary for the purposes of justice that the actual situs of the thing should be examined.” 1't has yielded in New York on the power of the State to tax the personal property of one of her citizens, situated in a .sister State,
 
 *
 
 and always yields to “ laws for attaching the estate of non-residents, because such laws necessarily assume that property has a situs entirely distinct from the owner’s domicile.” If New York cannot compel the personal property of Bates (one of her citizens) in Chicago to contribute to the expenses of her government, and if Bates had the legal right to own such property there, and was protected in its ownership by the laws of the State; and as the power to protect implies the right to regulate, it- would seem to follow that the dominion of Illinois over the property was complete, and her right perfect to regulate its transfer and subject it to process and execution in her own way and by her own laws.
 

 We do not propose to discuss the question bow far the transfer of personal property lawful in the owner’s domicile will be respected in the courts of the country wheré the property is located and a different rule of transfer prevails.
 
 *151
 
 It is a vexed question, on which l.earnecl courts have differed; but after all there is no absolute right to have such'transfer respected, and it is only on a principle of comity that it is ever allowed. And this principle of comity always yields when the laws and policy of the State where the property is located has prescribed a different rule of transfer with that of the. State where the owner lives.
 

 We have been referred to the case of
 
 Guillander
 
 v.
 
 Howell,
 

 *
 

 recently decided by the Court of Appeals of New York, and as we understand the .decision in that case, it harmonizes with the views presented in this opinion. A citizen of New York owning personal property in New Jersey made an assignment, with preferences to creditors, which was valid in New Yoi’kbut void inNew: Jersey. Certain creditors in New Jersey seized the property there under her foreign attaphment laws and sold it,'and the Court of Appeals recognizéü the validity of the attachment proceeding, and disregarded the sale in New York. That case and the one at bar are alike in all respects except that the attaching creditor there .was a citizen of the State in which he applied for the benefit oí the attachment laws, while Green, the plaintiff in error, was a citizen of New York; and it is insiste4 that this point of difference is a material element to be considered by the court in determining this controversy, for the reason that the parties to this suit, as citizens of New York, were bound by its laws. But the right under the Constitution of the .United States and the law of Congress which Green invoked to his aid is not at.all affected by the question of citizenship. We cannot see.why, if Illinois, in the spirit of enlightened legislation, concedes to. the citizens of other States equal privileges with her own in her foreign attachment laws, that the judgment against the-personal estate located in her. lim- . its of a non-resident1 debtor, which a citizen of New York lawfully'obtained there,'should have a different effect given to it under the provisions of the Constitutioh and the law of Congress, because the debtor, against whose property it was recovered, happened also to be a citizen of New York.
 

 
 *152
 
 The judgment of the Supreme Court of the State of New York is reversed, and the cause remitted to that court with instructions to enter
 

 Judgment eor the plaintiee in error.
 

 Sill
 
 v.
 
 Worswick, 1 H. Blackston, 690; 2 Kent,
 
 §
 
 376; Parsons
 
 v.
 
 Lyman, 20 New York, 103; Burlock
 
 v.
 
 Taylor, 16 Pickering, 335; Van Buskirk
 
 v.
 
 Hartford Ins. Co., 14 Connecticut, 583; Caskie v. Webster, 2 Wallace, Jr., 131.
 

 *
 

 5 Wallace, 312.
 

 *
 

 Henderson
 
 v.
 
 Morgan, 26 Illinois, 431; Porter
 
 v.
 
 Dement, 35 Id. 479.
 

 †
 

 Thornton
 
 v.
 
 Davenport, 1 Scammon, 296; Strawn
 
 v.
 
 Jones, 16 Illinois, 117.
 

 ‡
 

 1 Gilman, 187.
 

 §
 

 5 Id. 282.
 

 *
 

 Mills
 
 v.
 
 Duryee, 7 Cranch, 481.
 

 †
 

 5 Wallace, 290.
 

 *
 

 1 Sandford Ch. 146.
 

 †
 

 Cochran
 
 v.
 
 Fitch, 1 Sandford Ch. 146 ; Kane
 
 v.
 
 Cook 8 California, 449.
 

 ‡
 

 6 Pickering, 232.
 

 *
 

 The People
 
 ex.
 
 rel. Hoyt
 
 v.
 
 The Commissioner of Taxes, 23 New York, 225.
 

 *
 

 35 New York Reports, 657.