THE AULTMAN & TAYLOR MACHINERY CO. v. JAMES KEN-NEDY, Defendant, RED RIVER VALLEY NATIONAL BANK OF FARGO, N. D., Intervener, Appellee.

**Recording in Sister State:** ATTACHMENTS: *Notice.*  Where a chattel mortgage was executed in one state on property in another state, the recording of the mortgage in the state where executed was not constructive notice to creditors who attached the property in the state where it was situated.

MORTGAGE AND ATTACHMENT CREDITORS' RIGHTS: *What law governs.* Where a chattel mortgage is executed and recorded in the state on property in another state, and attached by a creditor of the mortgagor in the latter state, the rights of the mortgagee and attaching creditor will be determined by the law of the state where the property is situated.

NOTICE OF UNRECORDED MORTGAGE.  A chattel mortgage, valid between the parties, was executed on property in another state.  Before the levy of attachment on the property in the latter state the attaching creditor was informed, through its attorney and agent, that the intervening bank held a mortgage on all the attached property, and that, if he attached, "it would be him and the bank for it."  *Held,* that the notice was sufficient to put the attaching creditor on inquiry.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE, Judge.

THURSDAY, OCTOBER 3, 1901.

ACTION at law, aided by attachment. The intervener claimed the property attached under certain mortgages executed by defendant in the state of North Dakota. There was a trial to the court, resulting in a judgment finding intervener entitled to the possession of the property, and plaintiff appeals.—*Affirmed.*

*Dodge & Dodge* and *Stutsman & Stutsman* for appellant.

*L. Monte Cowles* and *C. L. Poor* for appellee.

DEEMER, J.—James Kennedy is a resident of North Dakota. On and prior to August 4, 1898, he was temporarily engaged in work at or near Burlington, in this state, in which he was using horses, mules, wagons, scrapers, plows, etc. During the night of August 4th Kennedy packed his entire outfit on board the cars, to be shipped out of the state. Hearing of his purpose, plaintiff, a creditor, commenced an attachment suit, and levied on the property hitherto described. On the 14th day of March, 1898, Kennedy, who, as we have said, was a resident of North Dakota, executed a chattel mortgage covering certain personal property then in Cass county, in that state (that being the place of his residence), and the property attached in this case, which was temporarily in this state, to the Red River National Bank intervener. This mortgage was filed for record with the register of Cass county, and duly recorded as required by the laws of the state where executed. The district court found that plaintiff had actual notice of intervener's mortgage before it made its levy, and that conclusion must be accepted as a verity, in view of the conflict in the evidence on this proposition. The mortgage was not recorded in this state, but was recorded in the county and state where the mortgagor resided. Part of the property covered thereby was in the county where the mortgage was recorded, and part of

it was temporarily in this state. It must be conceded that the recording of the mortgage in North Dakota did not, according to the great weight of authority, give constructive notice to purchasers or attaching creditors of property situated in this state at the time the mortgage was executed. *Langworthy v. Little,* 12 Cush. 109; *Ames Iron Works v. Warren,* 76 Ind. 512 (40 Am. Rep. 258); *Green v. Van Buskirk,* 7 Wall. 139 (19 L. Ed. 109); *Hervey v. Locomotive Works,* 93 U. S. 669 (23 L. Ed. 1003); *Golden v. Cockril,* 1 Kan. 258; *Clark v. Tarbell,* 58 N. H. 88. Had the property been in the state of North Dakota when the mortgage was executed, and had the mortgage been duly recorded according to the laws of that state, a subsequent removal of the property to this state would not have defeated the mortgagee's lien. *Smith v. McLean,* 24 Iowa, 322; *Simms v. McKee,* 25 Iowa, 341; *Fisher v. Friedman,* 47 Iowa, 443.

As the property was not in Dakota when the mortgage was executed and recorded, plaintiff was not bound to search the records of that state to discover if there were any liens thereon; and, as the mortgage was not recorded in this state, it had no constructive notice thereof. The district court found that it had actual notice of the mortgage before it levied its attachment, and for that reason, as we understand it, rendered judgment in favor of intervener. This conclusion is said to be erroneous, for the reason that the mortgage was invalid under the laws of North Dakota, where executed, and where it was to be performed; and, as it was invalid there, it was and is invalid everywhere. As a general rule, the *lex loci contractus* governs the validity and effect of a voluntarily executed conveyance or transfer of personal property; and, if the instrument be invalid where made, it will not be sustained elsewhere. *Black v. Zacharie,* 3 How. 483 (11 L. Ed. 690); *Kerr v. Urie,* 86 Md. 72 (37 Atl. Rep. 789); *Marvin Safe Co. v. Norton,* 48 N. J. Law, 410 (7 Atl. Rep. 418). Appellant seeks to invoke this rule, and pleads the statutes of North Dakota, which provide, in

substance, that a mortgage is void, as against creditors of the mortgagor and subsequent purchasers in good faith for value, unless the original or an authenticated copy is filed in the office of the register of deeds where the property mortgaged, or any part thereof is at such time situated.   It will be noticed that an unrecorded mortgage is not declared invalid as between the parties.   As to them it is undoubtedly valid. Our own statute is somewhat similar-to this one, and it is universally held that such a mortgage is not invalid.   *Allen. v. McCalla*, 25 Iowa, 464, and cases cited under section 2906 of the Code.   The rule that the validity, interpretation, and effect of a contract are to be governed by the *lex loci contractus* applies only to the rights and obligations of the parties to the contract.   The question in this case is not the validity of the contract between the parties.   It must be conceded to be good, no matter what the *locus* of the property at the time the mortgage was executed.   The recordation required by the statute was to preserve the lien as against third parties, and the real question is one of priority between lienholders, which must be determined by the law of the place where the property lies, and where the court sits which is to decide the case.   *Harrison v. Sterry,* 5 Cranch, 289 (3 L. Ed. 104).   The legislature of North Dakota probably had the right to regulate contracts made between citizens residing within its own jurisdiction, but it had no right to fix the priorities of non-resident creditors in property located in another jurisdiction.   In other words, it could declare a mortgage executed within its own jurisdiction invalid as between the parties, but it could not fix the priorities of creditors in property located in another jurisdiction, in contests arising in another forum.   As between Kennedy and the Red River Valley National Bank, the mortgage on property temporarily within the jurisdiction of this state was valid.   There was nothing in the contract *contra bonos mores,* and no reason exists for not enforcing it in this state, unless it be contrary to our laws.   True, the legal *situs* of the prop-

erty was the *lex situs* of the owner, but according to the law of that *situs* the mortgage was valid between the parties. The controversy here is not between the mortgagor and mortgagee, but between the mortgagee and a creditor who attached the property in this state. In such a case the law of the actual *situs* of the property controls, because of the effect given to it as the *lex fori*. Minor, Conflict of Laws, section 14. All questions pertaining to the nature and extent of the remedy are governed by the *lex fori*. *Lewis v. Bush,* 30 Minn. 244 (15 N. W. Rep. 113). In *Marvin Safe Co. v. Norton,* 40 N. J. Law, 410 (7 Atl. Rep. 418), a contract for the sale of personal property was made and performed in Pennsylvania. The property was immediately transported to New Jersey, and afterward sold to a *bona fide* purchaser. Reservation of title in a conditional sale is by the law of Pennsylvania invalid as against creditors and bona fide purchasers. By the law of New Jersey such a reservation was valid, although no record was made of the contract. In a suit by the original vendor to recover the property, the purchaser from the conditional vendee set up in defense the law of Pennsylvania. It was held that, his contract of purchase having been made in New Jersey, its legal effect and the purchaser's right under it were determinable by the law of that state, by which law he acquired only such title as his immediate vendor had when the property was brought into it and became subject to its laws. In the instant case the plaintiff secured its attachment and acquired the rights under the laws of this state, and it may only take thereunder such rights as the attachment defendant had in the property under the laws of this state. See, also, *Public Parks Amusement Co. v. Embree-McLean Carriage Co.* 64 Ark. 29 (40 S. W. Rep. 582) ; *Hervey v. Locomotive Works,* 93 U. S. 664 (23 L. Ed. 1003). In *Wattson v. Campbell,* 38 N. Y. 153, a chattel mortgage was executed in Pennsylvania on a ship situated in New York. By the laws of Pennsylvania such a mortgage was invalid as to creditors if unaccompanied by

actual change of possession.  Before the mortgagee obtained possession the vessel was attached in New York by Pennsylvania creditors.  The court held that the *lex loci contractus,* and not the *lex loci situs,* should govern.  That case was made to turn on the unwritten or common law of Pennsylvania, declaring such chattel mortgages fraudulent and void,—not presumptively so,—but in every instance and under all circumstances invalid.  Where, however, the invalidity is created by a statute of the *lex loci contractus* which has no extra-territorial force, it has been held that the invalidity will not be regarded in other states.  *Hoyt v. Thompson's Ex'r,* 19 N. Y. 207; *Scoville v. Canfield,* 14 Johns, 338; *Cronan v. Fox,* 50 N. J. Law, 417 (14 Atl. Rep. 119).  As a general rule, the law of the place where the property is situated at the time of the transfer governs the validity of a mortgage under the recording acts.  *Green v. Van Buskirk,* 7 Wall. 139 (19 L. Ed. 109); *Ames Iron Works v. Warren,* 76 Ind. 512 (40 Am. Rep. 258).  In the *Green Case, supra,* Judge Story said, in substance, that the theory that a voluntary transfer of personal property is to be governed everywhere by the law of the owner's domicile is a fiction of by no means universal application, and yields whenever it is necessary, for the purpose of justice, that the actual *situs* of the thing should be examined.  "It has yielded in New York, on the power of the state to tax personal property of one of her citizens situated in a sister state (*People v. Commissioners,* 23 N. Y. 242), and always yields to 'laws for attaching the estate of non-residents, because such laws necessarily assume that property has a *situs* entirely distinct from the owner's domicile.'  If New York cannot compel the personal property of Bates, one of her citizens, in Chicago, to contribute to the expenses of her government, and if Bates had the legal right to own such property there, and was protected in its ownership by the laws of the state, and as the power to protect implies the power to regulate, it would seem

to follow that the dominion of Illinois over the property was complete, and her right perfect, to regulate its transfer, and subject it to process and execution in her own way and by her own laws. We do not propose to discuss the question how far the transfer of personal property lawful in the owner's domicile will be respected in the courts of the country where the property is located and a different rule of transfer prevails. It is a vexed question, on which learned courts have differed; but, after all, there is no absolute right to have such transfer respected, and it is only on a principle of comity that it is ever allowed. And this principle of comity always yields when the laws and policy of the state where the property is located has prescribed a different rule of transfer with that of the state where the owner lives." In New Hampshire it is held that the *lex fori* determines whether the mortgaged property is subject to attachment, and what the proper mode of procedure is in making the attachment. *Ferguson v. Clifford,* 37 N. H. 86. And in the same state it was said, in *Clark v. Tarbell,* 58 N. H. 88: "And, if two persons in another state choose to bargain concerning property which one of them has in a chattel not within the jurisdiction of the place, they cannot expect that the rights of persons in the country where the chattel is will be permitted to be affected by their contract."

The mortgage, as we have said, was not invalid as between the parties. Such has been the uniform holding of the supreme court of North Dakota. See *Bank v. Oium,* 3 N. D. 193 (54 N. W. Rep. 1035); *Sykes v. Hannawalt,* 5 N. D. 335 (65 N. W. Rep. 682). In each of these cases it is held that an unfiled mortgage is valid as between the parties, and valid as to attaching creditors, even without notice of the mortgagee, whose debts were contracted before the execution and delivery of the mortgage. So that, according to the holding of the supreme court of that state, the mortgage in question was valid at least as between the parties. As it was valid where executed, it should be treated

as valid here, unless contrary to our laws or policy. Under our law the mortgage was undoubtedly valid as between the parties and all persons having knowledge thereof. See authorities hitherto cited. But appellant contends that it had no such notice of the mortgage before the levy as the law requires. This is a mixed question of law and fact. The trial court was authorized to find that before the levy of the attachment the plaintiff was informed through its agent and attorney that intervener held a mortgage on all the attached property, and that, if he attached, "it would be him and the bank for it." This is said to be insufficient, for the reason that actual notice must be clear and undoubted, must designate the property covered by the mortgage, express the sum for which the property is bound, and give substantially the same information as would have been given by an inspection of the instrument. Whatever the rule in other jurisdictions, that is not the rule in this state. Here the notice is sufficient if it puts the party upon such inquiry as, if prosecuted, would lead to a knowledge of those rights with which it is proposed to affect him. The information given need not of necessity disclose the name of the mortgagee, nor the amount of the debt secured by the mortgage. It is sufficient if it puts a reasonable man upon inquiry which would certainly lead to a knowledge or discovery of the rights of the mortgagee under his mortgage. *Coleman v. Reel,* 75 Iowa, 304; *Allen v. McCalla,* 25 Iowa, 464; *Wilson v. Miller,* 16 Iowa, 111; *Moline Plow Co. v. Braden,* 71 Iowa, 141; *German Sav. Bank v. Armour Packing Co.* (Iowa), 75 N. W. Rep. 503, not officially reported; *Weare v. Williams,* 85 Iowa, 253. These cases are controlling on the question of notice. The trial court correctly awarded the property to the intervener.—AFFIRMED.