## In re BRANNOCK.

## WICKHAM v. BARLOW et al.

(District Court, N. D. Iowa, Cedar Rapids Division. August 8, 1904.)

No. 426.

1. CHATTEL MORTGAGE—RECORDING—LAW GOVERNING.
   The recording of a chattel mortgage, and the effect of such recording, are governed by the law of the state where the property is situated.

2. SAME—RESIDENCE OF MORTGAGOR—RECITAL IN MORTGAGE.
   The recital in a chattel mortgage of the residence of the mortgagor is not evidence of his place of residence, to affect the question of where the mortgage should be recorded.

3. SAME—VALIDITY OF RECORD—PRESUMPTION.
   Where a chattel mortgage was duly executed in Iowa, and recorded in the county where the property was actually situated, and in the possession of the mortgagor, the burden rests on one attacking the validity of the record to show by competent evidence that the mortgagor was not a resident of such county.

4. SAME—COUNTY OF RECORD—IOWA STATUTE.
   Under Code Iowa, § 2906, which requires a chattel mortgage to be recorded in the county where the holder of the property resides, a mortgagor may be a resident of a county, within the meaning of the statute, although his legal domicile is elsewhere; and a mortgage given by a railroad contractor on property in his possession, in a county where he is at work, and in which he actually resides with his family, while engaged in performing his contract, is properly recorded in such county, although his residence there may be only temporary.

5. SAME—SUFFICIENCY OF DESCRIPTION.
   A description of property in a chattel mortgage as "twelve head of work horses, twelve sets of harness, eight dump wagons, one New Era grading machine, all camp outfit, camp utensils, all scrapers (12) now in my camp outfit * * * now working on the electric line from Iowa City to Cedar Rapids, Iowa, * * * the said property being located on the right of way of above electric line, in Johnson County, Iowa," is sufficient to identify the property, under the Iowa authorities.

In Bankruptcy.   On review of order of referee.

On petition of E. A. Wickham for review of order of referee denying claim of the petitioner to priority in the proceeds of property covered by a chattel mortgage of the bankrupt to him. James Brannock was adjudged an involuntary bankrupt by this court February 9, 1904, upon petition of certain of his creditors filed January 2d preceding. He was a railway contractor, and came to Johnson county, Iowa, in June, 1903, where he had a contract for grading upon the Cedar Rapids, Iowa City & Southern Railroad—an electric railway line then in process of construction through Johnson county. June 25, 1903, at Council Bluffs, Iowa, he made to the petitioner, Wickham, a chattel mortgage on his grading outfit, then in Johnson county, and used by him in such railroad work, which mortgage was duly acknowledged by the bankrupt as required by the laws of Iowa, and was filed by petitioner in the office of the recorder of deeds of Johnson county on June 29, 1903, and afterwards duly recorded in said county. The mortgage, so far as material to the questions presented for review in this proceeding, is as follows: "That I, James Brannock, Omaha, Nebraska, of the County of Douglas and State of Nebraska, in consideration of the sum of $1,067.25 to me in hand paid by E. A. Wickham of Council Bluffs, Iowa, party of the second part, do grant, bargain, and convey unto said second party the following goods and chattels, to wit:   Twelve head

¶ 1. See Chattel Mortgages, vol. 9, Cent. Dig. § 151.

of work horses, twelve sets of harness, eight dump wagons, one New Era grading machine, all camp outfit, camp utensils, all scrapers (12) now in my camp outfit that has been working upon the G. W. railroad, in Shelby County, Iowa, and are now working on the electric line from Iowa City to Cedar Rapids, Iowa, under subcontract with Murray Bros., of Cedar Rapids, Iowa; the said property being located on the right of way of above electric line, in Johnson County, Iowa." This property was sold by order of the referee, free from the mortgage lien; the proceeds being held in lieu of such property. The petitioner made proof of his debt secured by the mortgage, and claimed priority upon the proceeds of the mortgaged property. Charles Barrow and other creditors of the bankrupt filed objections to its allowance as a prior claim upon the grounds (1) that the bankrupt at the time of making the mortgage was a resident of the state of Nebraska, and that the record of the mortgage in Johnson county, Iowa, was unauthorized; and (2) that the description of the property in the mortgage was void for uncertainty. The referee sustained the former of these objections, and denied the claim of the petitioner to priority. In his certificate, the referee says: "The legal residence of James Brannock is in dispute in this controversy. He worked on the line during the summer and fall, and left Johnson county some time in December, 1903. * * * Much of the evidence introduced in relation to the residence of James Brannock is incompetent and hearsay, and but little weight is to be given to the same. However, we think the statement in the mortgage, 'I, James Brannock, Omaha, Nebraska, of the County of Douglas and State of Nebraska,' raises a presumption that his residence is in Omaha. This presumption, taken with the evidence in the case, compels us to find that his legal residence was in Nebraska. Certain it is, he had no legal residence in Johnson county, Iowa. He was here only for a temporary purpose, and went away as soon as that was accomplished. The recording of this mortgage in Johnson county was not in accordance with the statute, and did not impart constructive notice of the mortgage. It is not necessary to pass upon the question of the sufficiency of the description in the mortgage, for the reason that the holding above disposes of the case." The petition for review challenges the correctness of this decision or order of the referee.

Remley & Ney, for petitioner.

Ranck & Bradley, Baldwin & Fairchild, and Baker & Ball, for contesting creditors.

REED, District Judge (after stating the facts). The questions for determination are: (1) Was the chattel mortgage of the petitioner, Wickham, properly recorded in Johnson county, Iowa? (2) If it was, is the property sufficiently described therein?

1. The property being situated in Iowa when the mortgage was made, record of it in the state of Nebraska, even though the mortgagor had then resided there, would have been wholly ineffective in Iowa, as constructive notice to creditors of, or purchasers from, the mortgagor. Green v. Van Buskirk, 7 Wall. 139, 19 L. Ed. 109; Hervey v. Locomotive Works, 93 U. S. 669, 23 L. Ed. 1003; Aultman & Taylor Co. v. Kennedy, 114 Iowa, 444, 87 N. W. 435, 89 Am. St. Rep. 373; Golden v. Cockrill, 1 Kan. 259, 81 Am. Dec. 510; Kanaga v. Taylor, 7 Ohio St. 134, 70 Am. Dec. 62; Ames Ironworks v. Warren, 76 Ind. 512, 40 Am. Rep. 258. Such a mortgage is governed by the law of the place where the chattels are situated at the time it is made, and the question of its priority, as between different lienholders, is to be determined by the law of such place. Ames Ironworks v. Warren, 76 Ind. 512, 40 Am. Rep. 258; Harrison v. Sterry, 5 Cranch, 289, 3 L. Ed. 104; Aultman & Taylor Co. v. Kennedy, 114 Iowa, 444, 87 N. W. 435, 89 Am. St. Rep. 373.

As the mortgagee had not taken possession of the property, the validity of the mortgage, as against creditors of the bankrupt, depends upon whether or not it was properly recorded in Johnson county, where the property was situated at the time the mortgage was made. This depends upon the meaning of the Code of Iowa, providing for the recording of chattel mortgages in that state. That Code provides:

"Sec. 2906. No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors, or subsequent purchasers, without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides."

It is contended by the contesting creditors that the evidence shows that the legal residence or domicile of the mortgagor at the time this mortgage was made was in Nebraska, and that therefore the mortgage could not be legally recorded in Iowa. The referee held that the evidence, aside from the recital in the mortgage, is insufficient to show such residence or domicile, and he bases his conclusion that the mortgage was not properly recorded in Iowa upon the ground that that recital presumptively shows that his legal residence or domicile was in Nebraska. Such recital is as follows: "I, James Brannock, Omaha, Nebraska, of the County of Douglas and State of Nebraska. * * *" This recital is not evidence of the residence of the mortgagor, and is in no way controlling as to the place where the mortgage should be recorded. Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816. This case arose under the recording laws of the state of New York, and therein it is said, at page 737, 101 U. S., 25 L. Ed. 816:

"Some stress is laid upon the fact that in each of the mortgages the mortgagor is described as 'of the City of New York.' The actual residence controls the place of filing the mortgage. * * * The recital of the residence in the mortgage seems to be of no importance, and might, for the matter of security, be omitted altogether."

From the evidence, it appears that the bankrupt was engaged in the work of grading upon railroads in process of construction, and had been for a number of years; that he had done such work in the states of Illinois, Mississippi, Missouri, Nebraska, and Iowa; that, in doing such work, he lived in a camp or tent upon or near the right of way of the railway upon which he was working until that job was completed, when he would move to another one; that prior to his coming to Johnson county, in June, 1903, he was working upon a railroad in Shelby county, Iowa, with the outfit described in the mortgage in controversy in this proceeding; that in such county he also lived in a tent or camp upon or near the right of way of the railroad. How long he had been at work and so lived there, is not definitely shown; but it would appear to have been for some months in 1903, and part of the year 1902. When he came to Johnson county, he located his tent upon or near the right of way of the railroad upon which he had the contract for grading; and here he remained with his family and this outfit until the latter part of December, 1903, when he absconded, leaving debts unpaid that he had

contracted while he was doing this work, among which are those of the creditors contesting the validity of petitioner's mortgage. At one time he lived in Nebraska, but whether or not he had a permanent place of abode there, to which he returned with his family after the completion of a particular job of work, or for a temporary purpose only, does not appear. The mortgage having been made in Iowa, properly acknowledged there, and placed of record in the county where the property was actually situated, and in the possession of the mortgagor, it is incumbent upon those attacking the validity of such record to establish its invalidity by competent evidence, and that they had no notice of the mortgage. Diemer v. Guernsey, 112 Iowa, 393, 83 N. W. 1047. The manifest purpose of section 2906 of the Code of Iowa is to impart notice to third parties of sales of, and mortgages or other liens upon, personal property situated in that state. Such purpose may be allowed some influence at least, in determining the proper meaning of the statute. The Supreme Court of Iowa has judicially determined the meaning of the words "actual resident of the county," as used in a section of the Code of Iowa conferring jurisdiction upon justices of the peace in that state; also the meaning of the word "nonresident," in a statute authorizing the issuance of attachments against nonresidents of the state. The former of these sections is:

"Sec. 4476. The jurisdiction of justices of the peace * * * is co-extensive with their respective counties, 'but does not embrace actions for the recovery of money against actual residents of any other county."

In Fitzgerald v. Arel, 63 Iowa, 104, 16 N. W. 712, 18 N. W. 713, 50 Am. Rep. 733, the defendant was sued for the recovery of money before a justice of the peace of Palo Alto county, and he moved to dismiss the action upon the ground that he was an actual resident of Des Moines county, in Iowa, when the action was brought, and that the justice of the peace therefore had no jurisdiction of the action. It was shown that the defendant was a contractor upon a railroad in process of construction in Palo Alto county; that he had resided for seven years in Des Moines county, and that he was absent from that county only for the purpose of working upon this railroad; that, while he had rented a house in Palo Alto county, in which his family lived during the time he was working upon the railroad, they would return with him to Des Moines county as soon as the contract was completed. Upon these facts, the Supreme Court of Iowa held that the action was rightly brought in the county where he was doing such work. It says:

"Whether the word 'resident,' as used in this statute, should have precisely the same meaning as in statutes providing for the exercise of the right of suffrage or for taxation, we need not determine. * * * It does not follow that defendant was an actual resident of Des Moines county because his domicile was there. Residence and domicile are not necessarily the same. * * * The distinction between the import of these terms is obvious. The first is used to indicate the place of dwelling, whether permanent or temporary; the second, to define the fixed and permanent residence to which, when absent, one has the intention of returning. This distinction is the same as is sometimes made between actual residence and legal residence or inhabitancy. The actual residence is not always the legal residence or inhabitancy of a man. The foreign minister actually resides and is personally present at the court to which he is

accredited, but his legal residence or inhabitancy or domicile are in his own country. \* \* \* In our opinion, whenever a man buys or rents a house, and sets up housekeeping with his family, with the design of remaining there until he has completed a certain job of work, he becomes an actual resident of that county, within the meaning of the statute in question; and that, too, notwithstanding his domicile may be in another county, to which he intends to return upon the completion of the job."

The other section referred to is section 3878 of the Code of Iowa, and it provides that writs of attachment may issue against nonresidents of the state. In Mann v. Taylor, 78 Iowa, 355, 43 N. W. 220, the question arose as to who was a nonresident of the state within the meaning of this section; and at page 262, 78 Iowa, page 222, 43 N. W., it is said:

"A resident of the state is one who resides in the state. To reside is to have a settled abode, permanent or for a time. A resident of the state is one who resides permanently or for a time in the state. There is not necessarily the idea of permanence connected with the significance of the words 'reside' and 'residence.' A resident may have a settled abode for a time, to be determined by circumstances. His residence may be temporary, for temporary purposes. He may retain his citizenship and his domicile in another state, and still be subject to the laws of this state intended to protect the rights of residents, and to provide remedies against them."

See, also, Ludlow v. Szold, 90 Iowa, 179, 57 N. W. 676.

The same distinction is recognized in section 2 (1) of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420].

In view of the manifest purpose of this section 2906, it may well be held that the definition given to the words "resident" and "reside," as used in other sections of the Code of Iowa, by the Supreme Court of the state, should also be given to the word "reside" as used in this section. Certain it is that the actual residence of the bankrupt, and the location of the property covered by this mortgage, were in Johnson county at the time it was made, even if that were not his permanent abode or domicile.

Counsel for the contesting creditors cite and rely upon Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, above. In that case the property was situated, and both parties to the mortgage resided, in the state of New York. The mortgage was not recorded in the county where the mortgagors resided, as required by the laws of that state, but in the city of New York, where the property was situated. It was held that such record was not notice to the creditors of the mortgagor. The court, in determining the matter, says:

"The question thus presented is within a very narrow compass, and is not free from difficulty. Its solution depends upon the meaning of the word 'reside,' employed in that statute. It is to be regretted that we are not guided by some direct, controlling adjudication in the courts of New York construing the statute under examination, but no such decision has been brought to our attention. With some hesitation we have reached the conclusion that a chattel mortgage, executed by a firm upon firm property, is void, under the New York statute, as against creditors, subsequent purchasers, and mortgagees in good faith, unless filed in the city or town where the individual members of the firm severally reside."

The members of this firm had never resided in the city of New York; hence the mortgage was not properly recorded there.

The Supreme Court of Iowa has judicially determined that the words "reside" and "resident," as used in the Code of Iowa, referring to nonresidents of the state and of a county therein, do not mean a permanent residence or domicile in the state or county; and there is no apparent reason why this definition should not apply to the word "reside" as used in section 2906. That being true, the definition so given to this word by the Supreme Court of Iowa is controlling. That the bankrupt was an actual resident of Johnson county, within such meaning, when this mortgage was made, and continued to reside there, with this property in his possession, until the last of December following the date of the mortgage, is clearly shown by the evidence. It follows, therefore, that the mortgage of the petitioner, Wickham, was properly and legally recorded in Johnson county.

2. Is the property sufficiently described in the mortgage? In Smith & Co. v. McLean, 24 Iowa, 322, the property there in controversy was described in the mortgage as follows: "Five freight wagons and twenty yoke of cattle, being the train now in my possession." That description was held to be sufficiently definite, and many illustrations are given of descriptions which have been held by different courts to be sufficiently certain; and the rule for determining the sufficiency of descriptions in mortgages of this character is stated to be "that a description which will enable third persons, aided by inquiries which the instrument itself indicates and directs, to identify the property, is sufficient"; citing many authorities. This rule has been many times reaffirmed in Iowa. The description of the property in the mortgage in question is stated above. That such description, aided by inquiries which the instrument itself indicates, would lead to an identification of the property, can hardly be doubted.

The order of the referee, therefore, is reversed, and he is directed to allow the claim of the petitioner as a preferred one upon the proceeds of this mortgaged property. It is so ordered.