## CONTINENTAL GIN CO. v. PANNELL et al.

No. 7647—Opinion Filed Oct. 17, 1916.

(160 Pac. 598.)

**1. Replevin—Pleading—Amendment.**

The amendment of pleadings is largely a discretionary matter, and it is not error to allow an amendment to a petition in an action in replevin, which changes the allegations of plaintiff's ownership in the property from that of absolute ownership to a special ownership, based upon the indebtedness evidenced by promissory notes and chattel mortgages securing the same and by adding a count setting up a conversion of the property and praying for the value thereof in case a delivery cannot be had.

**2. Chattel Mortgages—Rights of Parties—Sale by Mortgagee.**

Under the laws of the state of Arkansas, in force in Indian Territory prior to statehood, a chattel mortgage conveyed title to the mortgagee, subject only to the mortgagor's right of redemption, and under such law a mortgagee, on condition broken, had the right, pursuant to the terms of the mortgage, to sell the mortgaged property, although the property was at the time in adverse possession of another.

**3. Same—Action for Possession—Right of Action.**

After such sale of mortgaged property by a mortgagee out of possession, such mortgagee or the purchaser at the mortgage sale was entitled to recover possession of such property by appropriate action, the mortgagee to deliver possession to the purchaser, or the purchaser in his own right.

(Syllabus by Edwards, C.)

Error from Superior Court, Jefferson County; Will Linn, Judge.

Action by the Continental Gin Company against J. M. Pannell and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Chas. H. Garnett, for plaintiff in error.

Guy Green and Jos. T. Dillard, for defendants in error.

Opinion by EDWARDS, C. This case involves the ownership of certain gin property. The record discloses that the plaintiff held two chattel mortgages upon such property, securing the payment of two certain notes. The first note was dated September 13, 1906, due November 15, 1907. Various payments had been made, the last being on December 16, 1908. The second note was dated October 1, 1907, due October 1, 1908, no payments having been made thereon. Chattel mortgages were executed, securing each of said notes. On January 15, 1913, the plaintiff posted notices advertising the property covered by said chattel mortgages for sale on February 1, 1913, and on said last date plaintiff offered the said property for sale and purchased the same at such sale. At the time of sale the defendant J. M. Pannell was in possession of said property, claiming to be the owner thereof by purchase from the First National Bank of Ryan, and was present and forbade the sale. On December 13, 1913, the plaintiff filed this action in replevin in the ordinary form against J. M. Pannell and the First National Bank of Ryan, Okla. On July 25, 1914, the plaintiff filed an amended petition, making additional parties defendant, and adding to its action in replevin a count alleging the wrongful detention and conversion of the property by defendants, and praying a return of the property or its value. On February 22, 1915, plaintiff filed a second amended petition, bringing forward the counts of the first amended petition and pleading more in detail the said causes of action and for the first time setting out the notes and mortgages. The defendants, for answer, deny that there was ever any valid or legal foreclosure or sale of the property described in plaintiff's petition, whereby any right, title, or interest in and to said property was vested in the plaintiff, and, further, that if the plaintiff ever had any cause of action, the same was barred by the statute of limitations. Upon the trial of the case in the lower court the plaintiff offered in evidence its notes and chattel mortgages, together with numerous other exhibits, including considerable correspondence between the plaintiff and the bank, through which the defendant Pannell claimed to derive his title. At the conclusion of plaintiff's evidence the defendant demurred, which demurrer was by the court sustained.

It is argued by the defendants in error that the pleading of the notes and mortgages in the amended petition, and the count praying for the value of the property in case delivery could not be had, changed the cause of action, and set up a new and independent ground for recovery. But we construe the pleadings on the part of the plaintiff in error, plaintiff below, to state a cause of action in replevin based on the notes and mortgages for the possession of, or for the value of, the property described in the mortgages in case a delivery could not be had. As to the matter of amendment in alleging the notes and mortgages, this being discretionary with the trial court, the action of the court will not be interfered with, in the absence of a clear showing of abuse of discretion. Swope & Son. v. Burnham, Hanna, Munger & Co., 6 Okla. 736, 52 Pac. 924; Hawkins v. Overstreet, 7 Okla. 277, 54 Pac. 472; Z. J. Fort Produce Co. v. Southwestern Grain & Produce Co., 26 Okla. 13, 108 Pac. 386; Robinson v. Stiner, 26 Okla. 272, 109 Pac. 238; Culp v. Steere, 47 Kan. 746, 28 Pac. 987; Snider v. Windsor, 77 Kan. 67, 93 Pac. 600.

The case then resolves itself into this: Was the mortgage sale valid or invalid? If invalid, the statute of limitations had barred the note falling due on October 1, 1908, and upon which no payment had been made, and the plaintiff would be entitled, at the time of filing his suit, on December 15, 1913, to a lien only for the amount evidenced by the note upon which the last payment was made December 16, 1908; and this, we think, would be true, although the notes were not pleaded in the original petition, but were first set up in the amended petition. On the other hand, if the mortgage sale was valid and the plaintiff, as purchaser, took good title, it would have two years from the date of the conversion of the property within which to bring action for such conversion.

Plaintiff in error contends that the chattel mortgage sale of February 1, 1913, is valid, notwithstanding the fact that at the time of the sale the property was in the adverse possession of Pannell. The defendant in error, on the contrary, argues that where mortgaged personal property is held adversely, before sale of such property can be legally made by the mortgagee, he must first obtain possession of the property; that a sale of chattels by a mortgagee out of possession is void. The parties also differ as to whether the notes and mortgages are Indian Territory or Texas contracts, on the theory that if Indian Territory contracts, the Arkansas law in force before statehood will control, and if Texas contracts, the laws of that state govern, and, not being pleaded nor proven, will be presumed to be the same as the laws of this state. But, we do not regard this distinction as vital, for the reason that a different rule prevails for the construction of chattel mortgages where the contracts are executed in one state upon property in another. In such case the general rule is that the lex

situs governs. The rule is stated in 6 Cyc. 1060-1062, in these words:

"It sometimes happens that the nature, validity, construction, and effect of a mortgage has to be determined in a jurisdiction other than that where the contract was made. Where the place of contract and the locus of the property mortgaged coincide, the laws of that jurisdiction will govern the interpretation of the mortgage on the doctrine of comity. In cases where the property is situated in one jurisdiction and the mortgage is executed in another, the law of the place where the property is situated will usually govern."

In Jones on Chattel Mortgages, sec. 305, it is said that:

"The lex situs governs when a mortgage is executed in a state other than that in which the property is situated. * * * As a general rule, personal property is governed by the law of the domicile of the owner, and not by the law of the situs of the property; but a transfer of such property by way of mortgage is an exception to the rule, and the lex situs and not the lex domicilii, governs chattel mortgages. The theory that the voluntary transfer of personal property is to be governed everywhere by the law of the owner's domicile proceeds on the fiction of law that the domicile of the owner draws to it the personal estate which he owns wherever it may happen to be located. But this fiction is by no means of universal application, and as Judge Story says, 'yields whenever it is necessary for the purposes of justice that the actual situs of the thing should be examined.'"

In Third National Bank v. National Bank of Commerce (Texas Civ. App.) 139 S. W. 665, where a chattel mortgage executed in Missouri, upon property situated in Texas, was under consideration, the court says:

"It is well settled that the lex situs governs when a chattel mortgage is executed in a state other than that in which the property is situated. Jones on Chattel Mortgages, sec. 305; Wharton on Conflict of Laws, sec. 317."

In re Brannock (D. C.) 131 Fed. 819, where the question was as to the effect of a chattel mortgage executed in Nebraska upon property situated in Iowa, the court says:

"Such a mortgage is governed by the law of the place where the chattels are situated at the time it is made, and the question of its priority, as between different lienholders, is to be determined by the law of such place. Ames Iron Works v. Warren, 76 Ind. 512, 40 Am. Rep. 258; Harrison v. Sterry, 5 Cranch, 289, 3 L. Ed. 104; Aultman & Taylor Co. v. Kennedy, 114 Iowa 444, 87 N. W. 435, 89 Am. St. Rep. 373."

In Mackey v. Pettijohn, 6 Kan. App. 57, 49 Pac. 636, where the question before the court was as to what law would govern in

the construction of a chattel mortgage given in Missouri, where mortgagor and mortgagee both resided, upon property situated in Kansas, it was held that the law of Kansas must apply. In support of his holding a voluminous citation of authorities is given. The rule is stated in the syllabus, as follows:

"A chattel mortgage made in Missouri by a person domiciled there, to a citizen of this state, upon property situated in this state, is governed by the law of Kansas, and not by the law of Missouri, as the place of contract."

In Pyeatt v. Powell, 51 Fed. 551, 2 C. C. A. 367, 10 U. S. App. 200, which arose in Indian Territory, and where the effect of a chattel mortgage executed in the state of Kansas by a resident of Indian Territory upon property then situated in Indian Territory was involved, the court says:

"As to the second ground, it must be borne in mind that the owner of the property mortgaged resided, and the mortgaged property itself was situated, in the Indian Territory. * * * The mortgage and these rights of creditors were governed by the lex domicilii of the owner who mortgaged the property, and by the law of the place where the property was situated. They were governed by the law of the Indian Territory. Green v. Van Buskirk, 7 Wall. 139 [19 L. Ed. 109]; Clark v. Tarbell, 58 N. H. 88; Guillander v. Howell, 35 N. Y. 657; Whitman v. Conner, 40 N. Y. Super. Ct. 339, 346; Iron Works v. Warren, 76 Ind. 512 [40 Am. Rep. 258]; Martin v. Potter, 34 Vt. 87; Tied. Sales, sec. 239; Jones, Chat. Mortg. sec. 305."

Upon the question of the effect of a chattel mortgage in the Indian Territory, the court says further in this case:

"Under the common law, whose rules must govern here, a mortgage of personal property vests the title in the mortgagee subject to be defeated upon compliance with its conditions, and upon a failure to comply therewith such title becomes absolute. Story, Bailm. sec. 287, and cases cited; Stewart v. Hanson, 35 Me. 506; Talbot v. De Forest, 3 G. Green [Iowa] 586; Flanders v. Barstow, 18 Me. 357."

See, also, Aultman v. Kennedy, 114 Iowa, 444, 87 N. W. 435, 89 Am. St. Rep. 373; Pleasanton v. Johnson, 91 Md. 673, 47 Atl. 1025; Denny v. Faulkner, 22 Kan. 89, 93; Warner v. Jaffray, 96 N. Y. 248, 48 Am. Rep. 616; Green v. Van Buskirk, 7 Wall. 139, 19 L. Ed. 109; Hervey v. Rhode Island Locomotive Works, 93 U. S. 664, 23 L. Ed. 1003.

Under the Arkansas law in force in the Indian Territory at the time the contracts were made, a chattel mortgage conveyed the title to the mortgage property, subject to the mortgagor's right to redeem. In Johnson v. Clark, 5 Ark. 321-335, the court says:

"A mortgage is the conveyance of an estate by way of pledge for the security of a debt, and to become void on the payment of it. The legal ownership is vested in the creditor, but in equity the mortgagor remains the actual owner until he is debarred by his own default or by judicial decree."

Under these authorities it is evident that the Arkansas law is controlling, and it is then necessary to determine whether or not under this law a mortgagee out of possession, where the property is adversely held, may make a valid sale of the property covered by the mortgage. In the mortgages involved in this action the mortgagee is authorized and empowered to enter upon the premises where the property is located or may be found, without demand, to take possession, advertise, and sell. The property in this case was not capable of manual delivery, but was advertised and sold according to the terms of the mortgage at the place where the property was then located. The owner of personal property may make a valid sale of the same when out of possession, and even when the property is held adversely. 35 Cyc. 47; Benj. on Sales (7th Ed.) 41. In those states in which a chattel mortgage conveys title to the mortgagee, subject to the right of redemption, it is by the weight of authority held that the mortgagee may sell the mortgaged property without at the time, having possession of the same. Jones on Chattel Mortgages (5th Ed.) sec. 706, says:

"After forfeiture a mortgagee, being entitled to possession, may maintain replevin or detinue for the mortgaged property against one who has tortiously taken it from the mortgagor, or against a creditor who has levied upon it. He may also bring replevin or detinue for the goods against the mortgagor himself, or trover against him for selling the mortgaged property. He may maintain this action, provided any portion of the indebtedness secured by the mortgage is still due and owing to him; and it is no defense to the action to show that a portion of the indebtedness has been paid, either before or after the bringing of the suit; but proof that the entire indebtedness has been discharged is such a defense. He may maintain the action after he has advertised and sold the property under a power in the mortgage; for he is entitled to possession so that he may deliver the property to the purchaser."

In Lacey v. Giboney, 36 Mo. 320, 88 Am. Dec. 145, an action involving personal property under a deed of trust in the nature of a mortgage, a sale was made by the mortgagee, though forbidden by the agent of the defendant at the time. The court held that the plaintiff as trustee in the deed clearly had the right to take the property into his possession, so that he could give possession to those to whom he might sell, and that he could maintain the action in his own name whether the sale were valid or not.

"For if it were not a sale, the trustee is still the legal owner and may maintain the action under the first averment in his petition; and if there was a sale, then he is still entitled to the possession as against a stranger, for the purpose of delivering the possession over to the purchasers and might maintain the action under the second averment in the petition."

In Pace v. Pierce, 49 Mo. 393, the holding of the court is stated in the syllabus as follows:

"A trustee in a chattel deed of trust has a right to the possession of the property even after sale, for the purpose of delivering it to the purchaser. And in case possession is withheld, the trustee may sue in replevin, or, so far as defendant is concerned, in damages for conversion of the property."

In Rust v. Electric Lighting Co., 124 Ala. 202, 27 South. 263, an action was brought by plaintiff to recover possession of certain personal property which he had purchased at a chattel mortgage foreclosure sale. The defendant averred that:

"It was in the open, notorious, and adverse possession of the property in controversy at the time the plaintiff purchased it at a foreclosure sale, and that it still was holding the same."

This averment was established by the evidence, but the court held that the purchaser at the foreclosure sale took a good title, and could maintain the action against defendant for possession of the property.

See, also, Brant v. Lane, 54 Tex. Civ. App. 425, 118 S. W. 229, 139 S. W. 768; Ames Iron Works v. Chinn, 15 Tex. Civ. App. 88, 38 S. W. 247; Barron v. San Angelo Nat. Bank (Tex. Civ. App.) 138 S. W. 142.

We are not unmindful of the statement in the case of Edmisson v. Drumm-Flato Com. Co., 13 Okla. 440, 73 Pac. 958, as follows:

"In order to enforce the lien, the company must first get possession, and then divest title, after which they must account for the proceeds."

But that statement, if not mere obiter, states the rule as applicable to the laws of the state of Oklahoma, under which a chattel mortgage does not pass title, but creates only a lien.

We, therefore, conclude that the mortgagee, though out of possession, had the right, under the laws of the state of Arkansas, applicable in this case, to sell the mortgaged property, and that his action thereafter to recover possession is not barred by the statute of limitations.

The cause is reversed and remanded.

By the Court: It is so ordered.